ROBERT VERB *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. MOTOROLA, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—93—3248

Opinion filed March 29, 1996.—Rehearing denied November 6, 1996.—Modified opinion filed November 12, 1996.

Holstein, Mack & Klein (Robert A. Holstein, Bruce J. Goodhart, and Aron D. Robinson, of counsel), Barnow & Hefty (Ben Barnow, of counsel), and Larry D. Drury, Ltd. (Larry D. Drury, of counsel), all of Chicago, for appellants.

Kirkland & Ellis (Brian D. Sieve, of counsel), Baker & McKenzie (John T. Coleman, of counsel), Jenner & Block (Barry Levenstam, of counsel), Lord, Bissell & Brook (Michael P. Comisky, of counsel), McKenna, Storer, Rowe, White & Farrug (Robert P. Pisani, of counsel), Segal, McCambridge, Singer & Mahoney (Donald Segal, of counsel), Wildman, Harrold, Allen & Dixon (Sarah L. Olsen, of counsel), all of Chicago, and Gilbert, Segall & Young (Bernard J. Rosenthal, of counsel), of New York, New York, for appellees.

JUSTICE BURKE delivered the modified opinion of the court upon denial of rehearing:

Plaintiffs Robert Verb and others similarly situated, who purchased cellular telephones from defendants Motorola and other similar companies, appeal from an order of the circuit court dismissing their second amended complaint against defendants pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1992)) and their class allegations pursuant to sections 2—615 and 2—801 of the Code (735 ILCS 5/2—615, 2—801 (West 1992)). On appeal, plaintiffs contend that the trial court erred in

holding that federal law preempted the trial court's jurisdictional power to hear this case, the Federal Communications Commission and/or the Food and Drug Administration has primary jurisdiction over this case, and that plaintiffs failed to allege a compensable injury in their second amended complaint (complaint). Plaintiffs further argue that they properly alleged all essential elements of each cause of action contained in their complaint and that the trial court erred in dismissing their class action allegations. For the reasons set forth below, we affirm.

Plaintiffs' eight-count complaint included claims of breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (1994)), negligence, strict liability, consumer fraud and deceptive trade practices. These claims were based on plaintiffs' allegations that a specific design of a cellular telephone manufactured by defendants may cause an increase in health risks to plaintiffs. That design combines the transmission antenna, which emits the cellular telephone's radio wave, and the mouthpiece of the cellular telephone into a single unit. Plaintiffs alleged a class consisting of people who similarly purchased, leased or obtained the cellular telephone for value. Plaintiffs purchased their cellular telephones from defendants between June 23, 1989, and December 21, 1992.

Plaintiffs further alleged that defendants' cellular telephone operates over a high frequency electromagnetic radio wave at a low power level and that scientific research has shown that certain high frequency emissions have "biological effects." More specifically, plaintiffs alleged that tests performed just below the frequency range used by cellular telephones indicate a penetration of the blood-brain barrier in test animals and that radio waves emitted below and above the frequency range used by cellular telephones causes both a breakdown in the calcium that coats cell walls and abnormal growth of human cells. Plaintiffs also claimed that defendants conducted few, if any tests, regarding the frequency range used by cellular telephones and the long-term cumulative health effects on the public.

Plaintiffs further alleged that defendants did not inform the public prior to 1992 that there is a lack of empirical data about radio waves at the frequency that cellular telephones operate on and of the possibilities of harmful physical effects to a user of the cellular telephone; that in 1990 "an Environmental Protection Agency report concluded that electromagnetic fields were probable or possible carcinogens"; that "8 years *** later, certain defendants are only now commissioning appropriate or adequate studies on how cellular

phones affect users' exposure to radio waves, the results of which will not be conclusive for several years"; on February 1, 1993, "defendant Cellone" mailed correspondence to plaintiff including a letter and brochure entitled "SAFE CELLULAR PHONES"; and on February 4, 1993, defendant Motorola's president stated that the cellular telephones' safety is "rooted in scientific fact."

Plaintiffs also alleged directly in each count, or by incorporation, as follows:

> "[D]efendant [*sic*] failed to *adequately warn* plaintiffs and the general public that (1) defendants had not conducted tests to discern whether use of the cellular phones posed any health risks to the users, and that (2) use of cellular phones *may be hazardous to the user's health.*
>
> *** Defendants also failed to *adequately* package and/or *label* the cellular phones to apprise the plaintiffs and the general public that (1) defendants had not conducted tests to discern whether use of the cellular phones *posed any health risks to the users*, and that (2) use of cellular phones *may be hazardous to the users' health.*" (Emphasis added.)

As a result of their use of the cellular telephones, plaintiffs alleged that they had been damaged as follows:

> "[Plaintiffs] and [m]embers of the [c]lass have been damaged by a reduction in the value of the cellular phones, by lessening their use of the cellular phones, by modifying the cellular phones of the use thereof to limit or mitigate their exposure to the harmful or potentially harmful radio waves, by being subjected to increased risk of exposure to harmful or potentially harmful radio waves, and by suffering increased risk of personal injury, whether manifested or not, or personal injury and the concomitant emotional distress associated with either."

Defendants filed a motion to dismiss plaintiffs' second amended complaint pursuant to section 2—615 of the Code and to dismiss the class action allegations pursuant to sections 2—615 and 2—801. 735 ILCS 5/2—615, 2—801 (West 1992). Plaintiffs filed an emergency motion for class certification, and an evidentiary hearing was held on June 24 and 25, 1993, at which time two of plaintiffs' experts testified with respect to whether the radiation emitted from cellular telephones poses a health risk to consumers. During that hearing, after the experts had testified, the following colloquy occurred:

> "MR. GOODHART [one of plaintiffs' attorneys]: *** I think our complaint alleged that we said *there was a risk and a lack of warnings of that risk.* And that has been our contention all along, that *there are no safe cellular phones ***.*
>
> * * *

THE COURT: There is no warning because there is no definitive study which can actually say that the cellular phone is dangerous.

\* \* \*

MR. JOHNSON [one of defendants' attorneys]: \*\*\* What we're talking about is a debate, a scientific debate. This is a debate that's being carried on at the EPA. We've seen that. At the FDA, we've seen those conclusions. The FCC \*\*\*.

\* \* \*

THE COURT: [Assuming you prove your case,] \*\*\* what remedy do you want me to impose on them?

\* \* \*

MR. DRURY [one of plaintiffs' attorneys]: \*\*\* These defendants have been misinforming the public as to the, quote, 'safety' of their telephones.

We believe we have demonstrated today that there is a *need to inform the public* out there that that isn't the fact, *that these phones are not safe.*

\* \* \*

THE COURT: What do you want me to do about it?

MR. DRURY: \*\*\* I want the public to be informed by way of a class certification.

\* \* \*

What I'm saying, your Honor, is part of a remedy would be a warning.

As Mr. Goodhart said, *our complaint is addressed to warning the people about what we believe to be a defective product, telling them that there is a risk associated with the use of the phone.*

THE COURT: Based on this testimony, you expect this Court to issue a worldwide warning against the use of cellular phones?

MR. DRURY: \*\*\* All I would ask that in any notice that goes to this class to be certified is that *they be notified that there is a risk*, a risk associated with the use of the phone \*\*\*.

THE COURT: I don't know if I'm interfering with a governmental function, an administrative function. I think that's the function of the administrative agencies, to make a determination as to whether something is healthful, unhealthful, dangerous to your health. That's a governmental function to put that before the people.

\* \* \*

\*\*\* What you want me to certify is a class of users of phones who may \*\*\* be at risk; and therefore, I must certify a class to broadcast to the public that there may be a causal connection.

\* \* \*

MR. DRURY: But for those persons \*\*\* [who would be in a non-manifested class with respect to an injury], we're asking at this

stage of the proceeding, *that that class be informed that there's a risk out there* before we go too far.

\* \* \*

MR. BARNOW [one of plaintiffs' attorneys]: \*\*\* [W]hat I thought I heard earlier was the unification, if you will, or the mating of the idea of the class certification along with a warning.

What I respectfully am suggesting to the Court is that we separate those and have the class certification *separate from the warning* and *defer the determination of ruling on whether or not the warning will happen and in what form it will happen in [sic] a later date,* but not to confuse whether or not a warning is issued with the class certification.

THE COURT: *Am I being called upon to give a warning?*

MR. DRURY: \*\*\* With respect to remedy, I think an appropriate remedy, irrespective of whether a class is certified or not—and I concur with Mr. Barnow—as to we should be able to *separate the warning,* the risk, from certification—is while this case was pending, \*\*\* the cellular phone industry put out \*\*\* a pamphlet that basically said we have all these tests, these phones are safe, [defendants could] *add a few paraphrases from different sources indicating it's not safe.*

\* \* \*

*Just so there's something in there that would indicate to the public that there's a contrary point of view.* \*\*\* They could do that in two or three sentences. \*\*\*

\*\*\* [*D*]*irect these defendants,* if they're going to send out something about safety, \*\*\* *indicating there's a contra position out there.*

\* \* \*

\*\*\* You can, as [an] appropriate remedy, \*\*\* *direct these Defendants to inform the public along the lines that I've suggested.*

You don't need a class certification for that. Based upon this evidence, *you could make a decision that the public has been misinformed, that it's not accurate.*

THE COURT: I don't think I can do that.

MR. DRURY: *It's not accurate to say those phones are safe.*

\* \* \*

*Could the court not direct these Defendants to say that they should no longer put out in their publications to the public something not to say that the phone is safe? Not say that the phone is safe as opposed to their coming out and saying definitively it is safe? Remove that. Remove that?"* (Emphasis added.)

At the hearing on defendants' motion to dismiss, the following colloquy occurred:

466

MS. FIETSAM [one of plaintiffs' attorneys]: This case is not only based on fraudulent misrepresentations, it's based on fraudulent omissions. These Defendants are manufacturing phones *with no warnings whatsoever.*

\* \* \*

They are supposed to, you know, we are currently contributing twenty-five million dollars to study the effects of these, the *health effects* of these phones *because we don't know.* They have not been conclusively proven safe.

\* \* \*

THE COURT: What is the legal question that you are presenting me with?

MS. FIETSAM: Whether or not these Defendants have issued or have manufactured deceptive products.

THE COURT: You mean defective?

MS. FIETSAM: Yes, defective products, \*\*\* *without adequate warnings.*

THE COURT: Defective products that will injure or cause injury to people without warning \*\*\*.

MS. FIETSAM: The case law is clear that failure to warn is in and of itself a defect. \*\*\*

THE COURT: It's not. It's a non-warning case. They haven't warned about anything.

MS. FIETSAM: That's right.

THE COURT: But you've got to show me under your proposition \*\*\* [that] there is something there that says they should warn these users about these cellular phones, and I fail to see anything yet as to what they should warn them about.

\* \* \*

\*\*\* [H]ow do you respond to the fact that your allegation of fraud occurred *after* these people purchased their phones?

MS. FIETSAM: That is part of our allegations. *The thrust of this case also goes to the warnings* and the fraudulent omissions promulgated *later* \*\*\* supported by the fact they've got the president waiting out there today *to say these phones are safe.* They are saying that. They are not denying that, and that is only part of our Complaint. This is a fraudulent omission complaint *based on the failure to warn.*

\* \* \*

MR. DRURY: *This case is not about your Honor issuing warnings. That's not the total part of this case.* This case is about the Defendant [sic] *not having put any warnings* whatsoever *with respect to its product* and the lack of those warnings creating a defect.

\* \* \*

We have telephones out there. These phones are manufactured by these Defendants. There are absolutely *no warnings with respect to these phones* concerning the fact that there is *no data whatever to show that these phones are safe. There's no warnings with respect to these phones* that exposure to the electromagnetic radiation which is emanating from these phones *increases the risk* of disease, predisposes one to disease or cancer." (Emphasis added.)

The trial court granted defendants' motions and dismissed plaintiffs' complaint and the class action allegations, holding that "the subject matter of this action is preempted by federal law. The FCC and/or FDA ha[s] primary jurisdiction over the issues raised in this case." The trial court further ruled that "[p]laintiffs have not alleged a compensable injury." This appeal followed.

Plaintiffs contend that the trial court erred in holding that the federal laws providing authority for the Federal Communications Commission (FCC) and the Food and Drug Administration (FDA) preempted the trial court's jurisdictional power to hear this case. Plaintiffs argue that the subject matter of their complaint sought to hold the defendants to the same common law duties that all business entities are required to uphold. Specifically, plaintiffs alleged in their complaint that defendants made inadequate warnings and affirmative fraudulent misrepresentations concerning the safety of cellular telephones. Plaintiffs also argue that the savings clause provided in the federal statutes does not preempt a private person from seeking redress for private injuries in court. Defendants argue that the state's power over the issue of cellular telephone safety is preempted by the pervasive federal regulatory scheme of the FCC and FDA.

■ The preemption doctrine provides that when Congress asserts exclusive power over a particular matter, no state has power over that matter. *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 438, 493 N.E.2d 1045 (1986). Congress can assert exclusive power either by explicit statutory language or by regulating a matter in such detail as to leave no room for state involvement. *Kellerman*, 112 Ill. 2d at 439; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982); *International Paper Co. v. Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987). "The preemption doctrine, which has its origin in the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2), provides that Federal law will in some instances override or preempt State laws on the same subject. (*Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1151-53.) The key inquiry in all preemption cases is the objective or purpose of Congress in enacting the particular statute. The doctrine

requires courts to examine the Federal statute in question to determine whether Congress intended it to supplant State laws on the same subject. (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed. 2d 206, 213, 105 S. Ct. 1904, 1910.)" *Kellerman*, 112 Ill. 2d at 438.

■ The parties have not directed us to a specific statute that governs the FCC's regulation of the cellular telephone industry with regard to the health effects or safety of cellular telephones. Accordingly, because there is no direct conflict between federal and state law, there can be no preemption on the grounds that a federal law directly overrides state law. *Kellerman*, 112 Ill. 2d at 438-39; *International Paper*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805. Instead, the only possible theory of FCC preemption would be if Congress regulated the cellular telephone industry so pervasively as to exclude state action on this subject. *Kellerman*, 112 Ill. 2d at 438-39; *International Paper*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805. The FCC regulates the frequency, channel spacing, and power limitations for cellular telephone use. 47 C.F.R. §§ 22.900 through 22.903 (1994). The FCC also regulates who may provide cellular telephone services and how these service providers must structure their businesses. 47 C.F.R. §§ 22.900 through 22.903 (1994). However, the FCC does not have the responsibility for public safety with regard to cellular telephones as its responsibilities lie in regulating frequency standards. FCC Rep. on Proposed Rule Making "Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation" (No. 93—62) (1993); *Kellerman*, 112 Ill. 2d at 440-41. Accordingly, since Congress has not empowered the FCC to regulate cellular telephones with regard to health effects and public safety, it has not regulated so pervasively as to preclude state action on that subject. Therefore, FCC regulations cannot preempt a state's power on the issue in the instant case, *i.e.*, whether cellular telephones are unsafe and pose an increased health risk to plaintiffs.

■ We find, however, that the FDA does preempt a state's power over the issues in the case at bar because the FDA directly regulates electronic products that emit radiation with regard to public health. Specifically, the Electronic Product Radiation Control Act (Act) (21 U.S.C.S. § 360kk(a)(1) (Law. Co-op. 1995)) provides that the FDA Secretary shall

> "[b]y regulation prescribe performance standards for electronic products *to control the emission of electronic product radiation* from such products if he determines that such standards are necessary for the *protection of the public health and safety*. Such standards may include provisions for the testing of such products

and the measurements of their electronic product radiation emissions, may require the attachment of warning signs and labels, and may require the provision of instructions for the installation, operation, and use of such products." (Emphasis added.) Congress further provided that whenever any standard prescribed pursuant to the Act is in effect, no state shall have the authority to act in conflict with that prescribed standard, unless that state act is to impose a more restrictive standard than required by federal law, but only on electronic products procured for the state's own use. 21 U.S.C.S. § 360ss (Law. Co-op. 1990).

In the present case, plaintiffs' complaint, without properly pleading allegations of an injury or damages as discussed below, centered on the lack of warnings as to the safety of and possible health risks caused by cellular telephones purchased by them which, the parties agree, emit radiation. More specifically, as stated in plaintiffs' opening brief on appeal, "This case arises out the Defendants' failure to warn the consuming public, including putative Plaintiffs, of the risks associated with the use of cellular portable telephones and the Defendants' false pronouncements of the phones' 'proven' safety, the safety of which has clearly *not* been proven." (Emphasis in original.) During the hearings on plaintiffs' emergency motion for class certification and defendants' motion to dismiss, plaintiffs repeatedly argued that the cellular telephones were not safe and that the public should be warned. Plaintiffs in fact urged the trial court to "direct" defendants to begin warning consumers that a contrary view existed with respect to the safety of the telephones and/or that the notice to the class, upon certification, include a statement that there is a health risk associated with the telephones. Accordingly, in light of the FDA's exclusive power "to prescribe performance standards for electronic products to control the emission of electronic product radiation *** for the protection of the public health and safety" and to "require the attachment of warnings and labels," it is irrelevant whether the FDA has not set any standards, as plaintiffs allege,[1] because the power to do so nonetheless resides with the FDA. Any determination by the trial court as to whether the cellular telephones are unsafe and what warnings and labels must be made would require the court to establish standards of safety and warnings, which would usurp the FDA's exclusive power to do so with respect to electronic products that emit radiation. We therefore find that the trial court properly ruled that plaintiffs' claims were preempted by the FDA.

---

[1]In fact, both parties acknowledge that the FDA, in conjunction with the FCC, is currently examining whether cellular telephones pose any health or safety risk to consumers.

Plaintiffs next argue, relying on *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996), that their "causes of action dealing with misrepresentations and omissions of fact sounding in consumer fraud, warranty, Magnusson Moss [*sic*] and the like" are not preempted. In *Lohr*, the plaintiffs filed a two-count complaint alleging negligence and strict liability based upon a design defect against the defendant manufacturer of a pacemaker which allegedly caused the plaintiff's injuries when the pacemaker failed. The defendant filed a motion for summary judgment, arguing that the plaintiff's claims were preempted by the federal Medical Device Amendments of 1976 (MDA) (21 U.S.C. § 360 (1994)) an act in connection with the FDA. Notwithstanding a specific preemption provision in the MDA and the fact that the FDA had "pre-approved" the defendant's pacemaker to enter the marketplace through an approval process provided by the MDA, the *Lohr* court held that the plaintiff's negligence and strict liability claims were not preempted by the MDA. The *Lohr* court reasoned that a determination as to whether the pacemaker which allegedly caused the plaintiff's injuries was defective would not result in a state "requirement" that "would impede the ability of federal regulators to implement and enforce specific federal requirements" related to "a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements." *Lohr*, 518 U.S. at 501, 135 L. Ed. 2d at 725, 116 S. Ct. at 2258.

■ In the case at bar, plaintiffs' complaint alleged that defendants gave inadequate warnings and made affirmative fraudulent misrepresentations concerning the safety of the cellular telephones; plaintiffs did not allege that a defect in defendants' cellular telephones *has* caused a present personal injury, as the *Lohr* plaintiff alleged the pacemaker had caused her injury, but rather that the telephones *may* have caused an injury. Accordingly, *Lohr* is distinguishable from the present case not only because it involved a statute different from the one here, but more important because plaintiffs here did not allege a present personal injury. Based on the facts of this case, as previously stated above, a determination by the trial court here as to whether defendants' cellular telephones *may* pose a health and safety hazard to the public would result in setting a safety standard for a specific device or field of device regulation, cellular telephones, which is within the sole province of the FDA.

■ We also reject plaintiffs' specific argument that they "properly alleged all essential elements of each cause of action" and that their "causes of actions dealing with misrepresentations and omissions of fact sounding in consumer fraud, warranty, Magnusson Moss [*sic*]

and the like" are not preempted. While we acknowledge that under properly alleged facts these kinds of causes of action may not be preempted by the present or other federal statutes, such as in *Lohr*, that is not the situation here because plaintiffs failed, at a minimum, to properly allege a compensable personal injury and/or damages as to each count of their complaint, notwithstanding their conflicting arguments to the contrary in the trial court, their briefs on appeal, at oral argument before this court and in their petition for rehearing.

More specifically, we note that plaintiffs alleged in their complaint that they had suffered damages "by a reduction in the value of the cellular phones, \*\*\* by being subjected to *increased risk of exposure* to harmful or potentially harmful radio waves, and by suffering *increased risk of personal injury, whether manifested or not, or personal injury and the concomitant emotional distress* associated with either." (Emphasis added.) At the hearing on defendants' motion to dismiss plaintiffs' complaint, plaintiffs' counsel, in response to the trial court's comment that plaintiffs had not shown the court "anybody here who has been injured" and that there was "only a possibility that somebody may be injured down the road," stated, "That's correct." During the same hearing, the court commented, "Nobody here has cancer. This is about an inadequate or non-existent warning when they should have warned," to which plaintiffs' counsel replied, "We are asking for refunds of money for the purchase of the phone. Possible diminution in value because of any modifications." In plaintiffs' opening brief on appeal, plaintiffs repeat their "personal injury/damages" allegations contained in their complaint in support of their argument that they adequately alleged a compensable injury. During oral argument before this court, plaintiffs again argued that they properly pled a personal injury based on testimony presented to the trial court regarding the "breakdown of cells," as well as an injury resulting from loss of the value of their cellular telephones. In plaintiffs' petition for rehearing filed subsequent to the issuance of this court's opinion in the instant case, plaintiffs state, "None of the plaintiffs in this action have suffered any demonstrable personal injuries," "plaintiffs do not sue for any personal injuries in this case," and "no personal injury claim was raised in this case."

Notwithstanding plaintiffs' apparent indecision as to what their alleged injuries are, they were required to properly allege a present personal injury and/or damages in each count of their complaint. *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1075, 445 N.E.2d 19 (1982) (breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and

breach of express warranty under the Uniform Commercial Code (810 ILCS 5/1—101 *et seq.* (West 1994))); *Gorman v. Saf-T-Mate, Inc.,* 513 F. Supp. 1028, 1033, 1035-36 (1981) (Magnuson-Moss Warranty Act); *Kirk v. Michael Reese Hospital & Medical Center,* 117 Ill. 2d 507, 525, 513 N.E.2d 387 (1987) (negligence); *Doyle v. White Metal Rolling & Stamping Corp.,* 249 Ill. App. 3d 370, 376, 618 N.E.2d 909 (1993) (strict liability); *Duran v. Leslie Oldsmobile, Inc.,* 229 Ill. App. 3d 1032, 1040-41, 594 N.E.2d 1355 (1992) (consumer fraud); *Popp v. Cash Station, Inc.,* 244 Ill. App. 3d 87, 98-99, 613 N.E.2d 1150 (1992) (Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 1994))). "In Illinois, possible future damages in a personal injury action are not compensable ***." *Morrissey v. Eli Lilly & Co.,* 76 Ill. App. 3d 753, 761, 394 N.E.2d 1369 (1979). It is also well settled that conclusions of law or fact unsupported by specific facts are not admitted. *Knox College v. Celotex Corp.,* 88 Ill. 2d 407, 426, 430 N.E.2d 976 (1981).

In the present case, plaintiffs' future "personal injury and damages" claims constitute conjecture and speculation. Plaintiffs failed to plead specific facts that any of them have discontinued the frequency of the use of their cellular telephones or that the telephones have diminished in value. Additionally, plaintiffs' claims are based upon their allegations that defendants' cellular telephones *may* pose health risks, *might* be unsafe and that plaintiffs *may* have suffered an "increased risk of injury." See also *Yost v. General Motors Corp.,* 651 F. Supp. 656, 657-58 (D.N.J. 1986) (where the plaintiff alleged that a potential leak in his automobile engine was *likely* to cause damage and *might* create potential safety hazards, the court held that the plaintiff failed to properly allege damages for breach of warranty). Absent from plaintiffs' complaint are allegations that plaintiffs, unlike the two plaintiffs named as a subclass in plaintiffs' "third amended complaint" which survived defendants' subsequent section 2—615 motion to dismiss, have a present personal injury and that defendants' cellular telephones caused that injury. Nor did plaintiffs allege that the telephones are defective; rather, their warranty claims, like their other claims, are based upon the possibility that the telephones *may* be defective because of the "unproven" safety of those telephones.

We also especially note that with respect to plaintiffs' consumer fraud claim, a plaintiff "can state a valid claim of consumer fraud only where premised upon statements made *prior* to their dates or purchase [of a product]." (Emphasis added.) *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 502 (1996). Here, the misrepresentations complained of by plaintiffs occurred in February 1993, *af-*

*ter* plaintiffs purchased their cellular telephones (between June 23, 1989, and December 21, 1992). To the extent that plaintiffs' complaint "revolves around" defendants alleged misrepresentations and omissions regarding the safety of the cellular telephones and defendants' knowledge of their safety, as plaintiffs argue, plaintiffs failed to state a cause of action under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1994)).

In summary, each count of plaintiffs' complaint fails to state a cause of action because plaintiffs' claims are all based upon mere theoretical possibilities of injury and/or damages. Accordingly, notwithstanding that the trial court did not specifically state that its finding of a lack of a "compensable injury" pertained to each count of plaintiffs' complaint, we so find.

In light of our decision affirming the trial court's dismissal of plaintiffs' second amended complaint based on preemption and lack of a compensable injury, we need not address the additional issues raised by plaintiffs regarding primary jurisdiction and class certification.

Affirmed.

SCARIANO and DiVITO, JJ., concur.