FRANK J. SCHIFFNER, on Behalf of Himself and All Other Persons Similarly Situated, Plaintiff-Appellant, v. MOTOROLA, INC., Defendant-Appellee.

First District (6th Division)   No. 1—97—2456

Opinion filed June 30, 1998.

Ben Barnow, Alan M. Goldberg, and Juanita H. Chen, all of Barnow & Goldberg, P.C., and Aron D. Robinson, both of Chicago, for appellant.

Garrett B. Johnson, Brian D. Sieve, and Terrence J. Dee, all of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Frank J. Schiffner appeals the dismissal of his fourth amended complaint against defendant Motorola, Inc., based on defendant's marketing and sale of cellular telephones. The circuit court granted defendant's section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1996)), finding that federal law preempted plaintiff's state law causes of action pursuant to the decision in *Verb v. Motorola, Inc.*, 284 Ill. App. 3d 460 (1996), *appeal denied*, 172 Ill. 2d 568 (1997).

The issue on appeal is whether plaintiff's causes of action under state law are preempted by federal law, *i.e.*, the Electronic Product Radiation Control Act (Act) (21 U.S.C.A. §§ 360hh through 360ss (West

Supp. 1998)). The *Verb* court held that the Act preempted the same causes of action advanced by the instant plaintiff in his fourth amended complaint. We find the *Verb* case persuasive and dispositive of this issue. Thus, we affirm the dismissal of plaintiff's complaint.

In addition, however, plaintiff contends that his complaint, unlike the *Verb* complaint, sufficiently stated a compensable injury by alleging the diminished value of a product due to defects associated with the product. We agree with plaintiff that such an allegation states a compensable injury.

The procedural background of this case tracks the path of the *Verb* complaint through the appellate decision in *Verb*, which was first filed in March 1996 and then, upon the denial of a petition for rehearing, was issued as a modified opinion in November 1996.

In August 1993, the circuit court dismissed the *Verb* complaint, holding that its subject matter was preempted by federal law and ruling that the *Verb* plaintiffs had not alleged a compensable injury. The circuit court's ruling was appealed.

In June 1995, the present plaintiff filed a second amended complaint. Defendant filed a motion to dismiss based on the circuit court's previous dismissal of the *Verb* complaint, which was then pending on appeal.

In March 1996, the appellate court filed its opinion in *Verb* and affirmed the dismissal of the *Verb* complaint. The *Verb* plaintiffs filed a petition for rehearing with the appellate court.

In response to the March 1996 *Verb* decision, the present plaintiff sought and received leave to file another amended complaint in June 1996. In September 1996, defendant filed another section 2—615 motion to dismiss plaintiff's third amended complaint or, in the alternative, a stay pending the appellate court's ruling on the rehearing petition in *Verb*. The circuit court granted a stay. In November 1996, the appellate court denied the *Verb* rehearing petition and filed a modified opinion.

In response to the *Verb* modified opinion, the circuit court lifted the stay in the present case in February 1997. On February 5, 1997, the circuit court, finding that the *Verb* opinion was dispositive on the preemption issue and binding on it, dismissed plaintiff's third amended complaint and allowed plaintiff to amend again.

With this background and direct link to *Verb*, plaintiff then filed his fourth amended complaint, which is at issue in the present appeal. Plaintiff's fourth amended complaint arises out of the marketing and sale of cellular portable telephones by defendant. Plaintiff alleged three causes of action: (1) breach of implied warranty of merchantability under the Uniform Commercial Code (810 ILCS 5/2—103 *et*

*seq.* (West 1992)); (2) consumer fraud; and (3) violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (1994)). In addition, plaintiff sought certain injunctive relief to stop defendant from continuing its alleged illegal acts and conduct on an ongoing basis as alleged in the complaint.

The gravamen of plaintiff's complaint is that defendant manufactured and sold cellular portable telephones that were defective because of the uncertain safety of the product and defendant's failure to disclose potential health risks and potential hazards associated with the use of the product. Cellular portable phones operate with a transmission antenna that emits the phone's electromagnetic radio waves into the phone unit. Plaintiff further alleges that defendant did not complete studies to definitively and accurately ascertain the safety of the use of the phones and defendant failed to advise plaintiff that the phones had not been proven safe. Plaintiff also alleged that defendant failed to adequately package or label the phones; failed to provide adequate information about the health risks; failed to provide adequate guards to shield the user from electromagnetic field (EMF) radiation; failed to provide adequate instructions on how to use the phone; and failed to adequately design the phone.

Defendant again filed a section 2—615 motion to dismiss plaintiff's complaint. The circuit court dismissed plaintiff's fourth amended complaint and, relying on the *Verb* decision, stated that the grounds for dismissal were preemption and "a lack of cognizable injury."

■ As a threshold matter, defendant asserts that the principles of *stare decisis* require this panel, the sixth division of the first district, to follow the precedent established by the second division of the first district in *Verb*. Defendant's assertion fails for two reasons. First, the doctrine of *stare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts. *Village of Northbrook v. Cannon*, 61 Ill. App. 3d 315, 322 (1978). Second, *"[s]tare decisis* is a policy of the courts to stand by precedent and leave settled points of law undisturbed." *Charles v. Seigfried*, 165 Ill. 2d 482, 492 (1995). The point of law at issue in the instant case is hardly settled law because, to date, the *Verb* opinion is the sole decision in the country on federal preemption under the Act. Moreover, a split in authority between the divisions of the first district is not unprecedented and has led to an ultimate resolution by the supreme court. See, *e.g., Moore v. Jackson Park Hospital*, 95 Ill. 2d 223 (1983) (resolving contrary decisions between the fourth division of the first district (*Muller v. Health & Hospital Governing Comm'n*, 106 Ill. App. 3d 383 (1982)) and the first division of the first district (*Isaacs v. Michael Reese Hospital & Medical Center*, 101 Ill. App. 3d 876

(1981))).[1] Thus, we decline defendant's invitation to apply *stare decisis* to the instant appeal.

■ We review *de novo* the dismissal of a complaint under section 2—615 for failure to state a cause of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 883 (1997).

On appeal, plaintiff essentially asserts that the *Verb* case was wrongly decided and that the *Verb* opinion failed to address plaintiff's arguments. We disagree.

■ The principles of federal preemption are well established. The doctrine of preemption is based on the supremacy clause of the United States Constitution, which mandates that " 'the Laws of the United States *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' " *Orman v. Charles Schwab & Co.*, 179 Ill. 2d 282, 285 (1997) (applied federal preemption), quoting U.S. Const., art. VI, cl. 2; *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 166 (1997) (rejected federal preemption).

Congressional intent determines whether a federal statute preempts state law. *Scholtens v. Schneider*, 173 Ill. 2d 375, 379 (1996) (no preemption); *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 334 (1996) (and cases cited therein) (preemption applies). "An act of Congress or regulatory law promulgated thereunder may supersede the statutory, regulatory or common law of any state where such '[is] the clear and manifest purpose of Congress.' " *Orman*, 179 Ill. 2d at 285, quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1152 (1947).

The intent of Congress to preempt state law may be manifested " 'by express provision, by implication, or by a conflict between federal and state law.' " *Busch*, 169 Ill. 2d at 335, quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance*

[1]While appellate court panels are bound only by higher courts, a circuit court may find it confusing to determine by which appellate court it may be bound. See *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 94 (1997) (Harrison, J., specially concurring, joined by Heiple, C.J.) (the majority holds that a circuit court is bound by the decisions of the appellate court of the district in which its sits and the special concurrence observes that since there is only one appellate court, a decision by any appellate court is binding on all circuit courts in the state).

*Co.*, 514 U.S. 645, 654, 131 L. Ed. 2d 695, 704, 115 S. Ct. 1671, 1676 (1995); see also *Orman*, 179 Ill. 2d at 285 ("[a] congressional act can either expressly or implicitly preempt a state cause of action"), citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 392, 115 S. Ct. 1483, 1487 (1995); see also *Scholtens*, 173 Ill. 2d at 379 ("Congress' intent to preempt state law may be explicitly stated in the statute's language or implicitly contained in its structure and purpose"), citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 77 L. Ed. 2d 490, 500, 103 S. Ct. 2890, 2900 (1983).

Notably, decisions of federal courts interpreting a federal act are controlling upon Illinois courts so that a federal act would be given uniform application. *Busch*, 169 Ill. 2d at 335. However, since no federal court has yet construed the preemptive scope of the Act, we can seek no guidance there. In addition, research has revealed that no other state has addressed the issue presented here. Thus, the only court to decide the preemptive effect of the Act is the *Verb* court.

The *Verb* court specifically found "that the FDA [Food and Drug Administration] does preempt a state's power over the issues in the case at bar because the FDA directly regulates electronic products that emit radiation with regard to public health." *Verb*, 284 Ill. App. 3d at 468. The *Verb* court quoted the Act as the empowering statute.

Factually, the *Verb* case and the instant case are indistinguishable: (1) the allegations in the complaints are virtually alike for purposes of the preemption issue, albeit not identical for purposes of the damage issue; and (2) the causes of action asserted in the complaints are the same. Regarding the allegations, the *Verb* court characterized the *Verb* complaint as follows:

> "In the present case, plaintiffs' complaint *** centered on the lack of warnings as to the safety of and possible health risks caused by cellular telephones purchased by them which, the parties agree, emit radiation. More specifically, as stated in plaintiffs' opening brief on appeal, 'This case arises out [of] the Defendants' failure to warn the consuming public, including putative Plaintiffs, of the risks associated with the use of cellular portable telephones and the Defendants' false pronouncements of the phones' "proven" safety, the safety of which has clearly *not* been proven.' (Emphasis in original.)" *Verb*, 284 Ill. App. 3d at 469.

The instant complaint can aptly be described in the exact same way. In addition, the causes of action are the same and plaintiff apparently does not contest that fact. The causes of action in each case include breach of implied warranty of merchantability, violation of the Magnuson-Moss Warranty Act and consumer fraud.

■ As to the legal issue, plaintiff's arguments on appeal as to the

merits of preemption were addressed by the *Verb* court. First, plaintiff observes that the Act does not expressly preempt state law claims. Indeed, the *Verb* court did not find that an express preemption existed in the Act. Rather, the *Verb* court correctly observed that "Congress can assert exclusive power either by explicit statutory language or by regulating a matter in such detail as to leave no room for state involvement." *Verb*, 284 Ill. App. 3d at 467; see also *Busch*, 169 Ill. 2d at 335 (federal preemption can be evidenced "by express provision, *by implication*, or by a conflict between federal and state law" (emphasis added)).

Second, plaintiff argues that preemption does not apply because there have been no standards prescribed for the performance of cellular portable telephones and, therefore, there can be no conflict between federal and state law. The *Verb* court expressly found:

"[I]t is irrelevant whether the FDA has not set any standards[, as plaintiffs allege, because the power to do so nonetheless resides with the FDA. Any determination by the trial court as to whether the cellular telephones are unsafe and what warnings and labels must be made would require the court to establish standards of safety and warnings, which would usurp the FDA's exclusive power to do so with respect to electronic products that emit radiation." *Verb*, 284 Ill. App. 3d at 469.

The absence of an affirmative regulation by an agency that is authorized to make such regulations does not discharge its power to do so and does not extinguish Congress' intent to relegate the authority to a federal agency to enact, where appropriate and approved, uniform national standards. See *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 178, 55 L. Ed. 2d 179, 201, 98 S. Ct. 988, 1004 (1978); *cf. Freightliner Corp. v. Myrick*, 514 U.S. 280, 286, 131 L. Ed. 2d 385, 392, 115 S. Ct. 1483, 1487 (1995) (the applicable federal agency did not have "all authority over the regulated area" under a different statute). Moreover, as previously stated, the United States Supreme Court has recognized three ways in which preemption of state law may arise: "by express provision, by implication, *or* by a conflict between federal and state law." (Emphasis added.) *New York State Conference of Blue Cross & Blue Shield Plans*, 514 U.S. at 654, 131 L. Ed. 2d at 704, 115 S. Ct. at 1676. Therefore, the lack of an actual conflict between federal and state law does not necessarily determine whether preemption applies.

■ Third, plaintiff argues that the Act does not preempt his state law claims, relying on *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (1996). The *Verb* court discussed and distinguished the *Lohr* case. *Verb*, 284 Ill. App. 3d at 470. The *Lohr*

court held that the plaintiffs' state claims, which were based on the defendant's manufacture of a pacemaker that failed and caused injuries to the recipient of the pacemaker, were not preempted by the federal Medical Device Amendments of 1976 (MDA) (21 U.S.C. § 360 (1994)). The *Verb* court held that *"Lohr* is distinguishable from the present case not only because it involved a statute different from the one here, but more important because plaintiffs here did not allege a present personal injury." *Verb*, 284 Ill. App. 3d at 470.

Fourth, plaintiff criticizes the *Verb* court for only discussing *Lohr* and not addressing "most of Plaintiff's authority dealing with construction of similar statutes." The *Verb* court correctly noted that "[t]he key inquiry in all preemption cases is the objective or purpose of Congress in enacting the *particular statute*. The doctrine requires courts to examine *the Federal statute in question* to determine whether Congress intended it to supplant State laws on the same subject." (Emphasis added.) *Verb*, 284 Ill. App. 3d at 467-68. The Supreme Court in *Lohr* emphasized that, to analyze preemption, courts must consider the language of the statute, the statutory framework surrounding it, the structure and purpose of the statute as a whole, and "the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Lohr*, 518 U.S. at 486, 135 L. Ed. 2d at 716, 116 S. Ct. at 2250-51. Obviously different statutes, different preemption provisions and different regulations will be interpreted differently. *E.g., Orman*, 179 Ill. 2d 282 (class actions alleging state law claims were preempted by the federal Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.* (1994))); *Busch*, 169 Ill. 2d 325 (common law claims were preempted by the Federal Hazardous Substances Act (15 U.S.C. § 1261 *et seq.* (1988))); *cf. Scholtens*, 173 Ill. 2d 375 (the federal Employee Retirement Income Security Act (29 U.S.C. § 1144 (1982)) did not preempt state theory of recovery). Furthermore, even the same statute can require differing results as to preemption given different underlying facts. *E.g., Lohr*, 518 U.S. 470, 135 L. Ed. 2d 700, 116 S. Ct. 2240 (the MDA did not preempt state claims); *cf. R.F. v. Abbott Laboratories*, No. A—2050—96T2 (May 7, 1998) (the MDA did preempt the plaintiffs' state claims due to FDA involvement). As noted above, the *Verb* court discussed the *Lohr* decision, the case on which plaintiff primarily relies, and distinguished it on the grounds that it involved a different statute. This court is not aware of any requirement that its decisions must include or discuss each and every case cited as authority by a party on appeal.

■ Fifth, plaintiff contends that state claims are allowed by a general savings clause in the Act, which declares that "[t]he remedies provided for in this part shall be in addition to and not in substitution

for any other remedies provided by law." 21 U.S.C.A. § 360pp(f) (West Supp. 1998). Although it did not mention the savings clause, the *Verb* court relied on two other provisions in the Act. The *Verb* court quoted the provision mandating the FDA secretary to promulgate regulations

"for electronic products to control the emission of electronic product radiation from such products if he determines that such standards are necessary for the protection of the public health and safety. Such standards may include provisions for the testing of such products and the measurement of their electronic product radiation emissions, may require the attachment of warning signs and labels, and may require the provision of instructions for the installation, operation, and use of such products." 21 U.S.C.A. § 360kk(a)(1) (West Supp. 1998).

The Act further includes a preemption clause:

"Whenever any standard prescribed pursuant to section 360kk of this title with respect to an aspect of performance of an electronic product is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, any standard which is applicable to the same aspect of performance of such product and which is not identical to the Federal Standard. Nothing in this part shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a requirement with respect to emission of radiation from electronic products procured for its own use if such requirement imposes a more restrictive standard than that required to comply with the otherwise applicable Federal standard." 21 U.S.C.A. § 360ss (West Supp. 1998).

Based on these provisions, the *Verb* court held that the plaintiffs' claims were preempted by the FDA. *Verb*, 284 Ill. App. 3d at 468-69. Although the *Verb* court did not discuss the general savings clause, the Illinois Supreme Court in *Orman* found that a general savings clause is not conclusive as to preemption. *Orman*, 179 Ill. 2d at 292. The Illinois Supreme Court relied on the United States Supreme Court's opinion in *Freightliner* in explaining that "a statutory preemption clause which preempts state laws that conflict with the federal law, but which also preserves nonconflicting state laws, does not foreclose the possibility of implied preemption." *Orman*, 179 Ill. 2d at 293, citing *Freightliner*, 514 U.S. at 288-89, 131 L. Ed. 2d at 393, 115 S. Ct. at 1488. Accordingly, the general savings clause in the Act does not necessarily preserve state claims.

We find that the *Verb* decision was correctly decided and addressed the legal arguments now presented by plaintiff on the preemption issue. Accordingly, we affirm the dismissal of plaintiff's fourth amended complaint because the state claims are preempted by federal law.

■ Notwithstanding our agreement with the *Verb* opinion on the preemption issue, we would not find the *Verb* opinion to be decisive on the damage issue because, unlike the *Verb* complaint, the instant complaint sufficiently alleged the diminished value of the product due to defects associated with the product, which is a compensable injury in consumer fraud and breach of warranty causes of action. Claims for diminished value of an allegedly defective product without the pleading of any damage to the product or person were allowed in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996), and *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59 (1997). Moreover, even the *Verb* court would have accepted such damage allegations. Most notably for the purposes of the present appeal the *Verb* court held that the *Verb* plaintiffs failed to "allege that the telephones are defective" and "failed to plead specific facts *** that the telephones have diminished in value." *Verb*, 284 Ill. App. 3d at 472.

Paragraph 39 of the instant fourth amended complaint alleges:

"Defendants['] cellular portable phones were defective in that they were sold:

a. Without adequate information about the health risks and the lack of information on the effects of EMF on human cells;

b. Without adequate guards to shield the user from the EMF radiation;

c. Without adequate instructions on how to use the phone including how to hold the phone so as to reduce exposure from EMF radiation;

d. Without adequate design so as to increase the distance between the user's head and the antenna of the phone."

Regarding damages in its count for breach of implied warranty of merchantability, paragraph 43 of plaintiff's complaint states:

"Plaintiff and members of the Class have been damaged by a reduction in the value of the cellular portable telephones, limiting the duration of their calls and usage of the cellular portable telephone, by modifying the cellular portable telephones or the use thereof to limit or mitigate their exposure to the harmful or potentially harmful radio waves, by being subjected to increased risk of exposure to potentially harmful radio waves, by failure to receive that which was bargained for."

Regarding damages in his count for statutory consumer fraud, paragraph 56 of the complaint states that "Plaintiff and Class Plaintiffs have been damaged as well by the loss of value of the phones they have purchased."

In *Connick*, the plaintiffs filed a class action lawsuit against car companies that manufactured the Suzuki Samurai after a consumer organization designated the Samurai as unsafe based on its excessive

risk of rolling over. In their complaint, plaintiffs alleged that the risk of rollover was due to a defect in either design or production, and stated claims for implied warranty and consumer fraud. "Significantly, plaintiffs did not allege that they had ever suffered a rollover accident in a Samurai. Rather, they sought compensation for the diminution in the vehicles' resale value due to the perceived safety risk." *Connick*, 174 Ill. 2d at 489.

The breach of warranty claim was dismissed by the supreme court in *Connick*, holding that the plaintiffs failed to allege sufficient notice to satisfy the notice requirement for a breach of warranty claim. *Connick*, 174 Ill. 2d at 495. The *Connick* court did not discuss the damage allegation for the breach of warranty claim.

The statutory consumer fraud count was reinstated but the *Connick* court did not discuss the damage allegation. *Connick*, 174 Ill. 2d at 501-05. The supreme court held that "[w]e reinstate the Illinois consumer fraud count, but only insofar as it was based on the 1986 Car & Driver article or on Suzuki's concealment of material facts regarding the Samurai's safety risk." *Connick*, 174 Ill. 2d at 505. However, at least by implication, if the damage allegation had been insufficient the supreme court would not have reinstated the claim.

In *Perona*, the plaintiffs filed a class action based on the alleged unintended acceleration of the Audi 5000 automobiles. Following the decision in *Connick*, the *Perona* court dismissed the breach of warranty count due to lack of notice and allowed the statutory consumer fraud count to stand. *Perona*, 292 Ill. App. 3d at 64, 69. Although the *Perona* court did not discuss the damage allegations in the complaint, it noted that the plaintiffs claimed that their cars lost their resale value and if the problem were not eventually remedied, their damages would be the amount of the diminution of the resale value. *Perona*, 292 Ill. App. 3d at 62-63. As in the *Connick* case, at least by implication, if the complaint had not sufficiently pled damages, then the *Perona* court would not have reinstated the consumer fraud claim.

We believe that the decisions in *Connick*, *Perona*, and *Verb* allow damage claims based on alleged diminished value of a product. Thus, unlike the *Verb* complaint, plaintiff's fourth amended complaint adequately alleged damages.

For all of the foregoing reasons, we affirm the dismissal of plaintiff's fourth amended complaint.

Affirmed.

ZWICK and QUINN, JJ., concur.