Russell A. JARMAN, individually and on behalf of all others similarly situated, Plaintiffs,

v.

UNITED INDUSTRIES CORP., UIC Holdings, LLC; Thomas H. Lee Equity Fund IV, LP; Thomas H. Lee Equity Advisors, IV, LLC; Thomas H. Lee Capital, LLC; Thomas H. Lee Company; David C. Pratt; Richard A. Bender; William P. Johnson; and Daniel J. Johnston, Defendants.

No. Civ.A.4:99CV40LN.

United States District Court,
S.D. Mississippi,
Eastern Division.

March 17, 2000.

L. Gray Geddie, Jr., Mason A. Goldsmith, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Greenville, SC, Bert Miano, S. Andrew Scharfenberg, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Birmingham, AL, William S. Rutchow, Ogletree, Deakins, Nash, Smoak & Stewart, Nashville, TN, G. Richard Baker, Campbell & Baker, LLP, Birmingham, AL, Thomas F. Campbell, Campbell & Baker, LLP, Birmingham, AL, for Russell A. Jarman.

Steven D. Orlansky, Rebecca L. Wiggs, Watkins & Eager, Jackson, MS, Dudley Von Holt, J. William Newbold, Carl L. Rowley, Robert J. Wagner, Thompson Coburn, LLP, St. Louis, MO, for United Industries Corporation, UIC Holdings, LLC, Thomas H. Lee Equity Fund IV, LP, Thomas H. Lee Equity Advisors, IV, LLC, Thomas H. Lee Capital, LLC, Thomas H. Lee Company, David C. Pratt, Richard A. Bender, William P. Johnson, Daniel J. Johnston.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Defendants United Industries Corp., UIC Holdings, LLC, Thomas H. Lee Equity Fund IV, LP, Thomas H. Lee Equity Advisors, IV, LLC, Thomas H. Lee Capital, LLC, Thomas H. Lee Company, David C. Pratt, Richard A. Bender, William P. Johnson and Daniel J. Johnston have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss for failure to state a claim upon which relief can be granted. Plaintiff Russell A. Jarman has responded in opposition to the motion and the court, having considered the parties' memoranda of authorities, concludes that defendants' motion is well taken and should be granted.

A review of the complaint in this cause discloses that on March 15, 1999, Russell A. Jarman purchased a package of Terminate, a termiticide manufactured and distributed by United Industries. He took it home and "applied the product some time thereafter." Eight days later, on March 23, purporting to act on his own behalf and all others similarly situated, he filed a twenty-one page, seven-count complaint against United and officers and alleged owners, based on allegations that statements contained in United's advertisements, package labeling and promotional materials overstate Terminate's ability to help prevent and/or eliminate termite infestation. In his complaint, which sets forth claims for common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and civil conspiracy, Jarman alleges that he would not have purchased Terminate "but for" United's false statements regarding the product's efficacy, and specifically United's having "suppressed the fact that Terminate is not as effective as represented, and that it cannot be used in place of professional chemical barrier treatments or without proper inspections of the structure the buyer is seeking to protect." Plaintiff has demanded recovery of the $50 purchase price he paid for the product along with unspecified damages for the fewer than eight days he claims that his home was left unprotected from termites.

United, joined by the other defendants, moved to dismiss plaintiff's complaint, primarily on the basis that plaintiff's claims are all preempted entirely by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq., and also because plaintiff has failed to allege that he has sustained damage as a result of his eight-day (or less) use of the product. United further has asserted additional independent grounds for the dismissal of

each of plaintiff's causes of action. However, without reaching these other grounds, the court concludes that plaintiff's complaint should be dismissed, for in the court's opinion, plaintiff's claims are preempted by FIFRA, and furthermore, plaintiff has alleged no cognizable injury resulting from his purchase and use of Terminate.[1]

FIFRA is a comprehensive federal statute that regulates the use, sale and labeling of pesticides and herbicides. Under FIFRA, all pesticides and herbicides sold or distributed in the United States must be registered with the Administrator of the Environmental Protection Agency (EPA), which is vested with primary regulatory authority by FIFRA. *Andrus v. AgrEvo USA Co.*, 178 F.3d 395, 398 (5th Cir.1999); *see also Bingham v. Terminix Int'l Co.*, 850 F.Supp. 516, 518 (S.D.Miss. 1994). To secure product registration, the manufacturer must submit to the EPA a "statement of all claims to be made for" the product as well as directions for its use, its ingredients and its adverse effects. *Andrus*, 178 F.3d at 398. Upon receipt of the requisite information, the EPA undertakes a comprehensive review of the materials and data and will register the product if it determines that

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of [FIFRA];

(C) it will perform intended function without unreasonable effects on the environment; and

(D) when used in accordance with widespread and commonly-recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). The EPA's review culminates both in product registration, and in approval of the label under which the product is to be marketed. *Andrus*, 178 F.3d at 398.

With respect to labeling, regulations promulgated by the EPA address the design and content of the label, *see* 40 C.F.R. § 156.10 and further require that the final printed labeling must be submitted before registration. Labeling is approved by the Administrator only if it is determined that the label is, "adequate to protect the public from fraud and from personal injury and to prevent unreasonable adverse effects on the environment." 40 C.F.R. § 156.10(i)(1)(i).

*Bingham*, 850 F.Supp. at 518–18. Once a product is registered and its label approved, the manufacturer generally may not modify the labeling approved by the EPA without EPA approval. 7 U.S.C. 136j(a)(2)(A); *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 251 (3d. Cir. 1999) ("FIFRA disallows any changes to an EPA-approved label unless the EPA approves the change.").

FIFRA preempts state laws through an express preemption provision, which prohibits states from "impos[ing] or continu[ing] in effect any requirement for labeling or packaging in addition to or different from this required under [FIFRA]."[2] This provision not only pre-

---

**1.** The remaining defendants, United Industries Corp., UIC Holdings, LLC, Thomas J. Lee Equity Fund IV, LP, Thomas H. Lee Equity Advisors IV, LLC, Thomas H. Lee Capital, LLC, Thomas H. Lee Company, Richard A. Bender, William P. Johnson and Daniel J. Johnston also contended that plaintiff's complaint against them is due to be dismissed for the reason that this court lacks personal jurisdiction over them. Because the court concludes that plaintiff has failed to state a viable claim against them in any event, the court finds it unnecessary to reach this issue.

**2.** The United States Supreme Court explained the concept of federal preemption in *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986), stating,

The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state

vents states from enacting legislation which conflicts with FIFRA's labeling requirements, but preempts, as well, state common law actions based on an alleged failure to warn or to convey information about a product through its EPA-approved label. *Andrus*, 178 F.3d at 398 (citing *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024 (5th Cir.1994)) (holding that there is " 'no doubt but that the FIFRA term "any requirements" makes no distinction between positive enactments and the common law.' "). Thus, as has been widely held, state common-law claims based on alleged inadequacies in a pesticide's label are preempted by FIFRA since such claims have the effect of imposing requirements in addition to or different from those required by FIFRA. As recently confirmed by the Fifth Circuit in *Andrus*, this includes claims relating to product efficacy.

The plaintiff in *Andrus* alleged that WHIP 360, the herbicide product he had purchased to combat a particular type of weed in his rice fields, failed to perform as specified on the product label; the product both proved ineffective in controlling the weeds and caused damage to his rice crop. The plaintiff's claims that WHIP 360 "failed to perform as specified pursuant to the label" and that he "relied to his detriment on the specifications pursuant to the Whip 360 product label" were found to be preempted, along with his breach of implied warranty claim, because these claims were "obviously based on the contents of the WHIP 360 label, and any adverse

judgment would have the 'undeniable practical effect' of imposing additional labeling standards on [the defendant]." *Id.* at 399.[3]

■ Likewise, in the case at bar, plaintiff's various state law claims are all ultimately grounded on his contention that United should have included additional and/or different information on its product label. Plaintiff nevertheless submits that for two reasons, none of his claims are preempted. First, he contends that even though FIFRA's prohibition on state labeling "requirements" can be said to preempt some state law claims, it cannot be construed to preempt damage claims regarding the *efficacy* of Terminate since the EPA was not required to, and did not review and/or evaluate United's efficacy claims about this product. He further points out that he has not limited his allegations regarding United's statements and omissions concerning Terminate's efficacy to the Terminate label; rather, according to plaintiff, he has also alleged *deceptive marketing* of Terminate, charging that United, in addition to information appearing on the Terminate label, has made numerous misrepresentations about the effectiveness of Terminate in advertisements directed to the public. He reasons that these claims are not based on the Terminate label, but on United's representations independent of the Terminate label, and thus do not fall within FIFRA's preemptive reach. Notwithstanding plaintiff's arguments to the contrary, the court is of

law, where compliance with both state and federal law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. In the case of FIFRA, the preemption is express.

3. *See also Wright v. American Cyanamid Co.*, 599 N.W.2d 668, 673 (Iowa 1999) (where "plaintiff's claim was that defendant's appli-

cation instructions were defective and that Pursuit did not work, and thus, control of tall waterhemp should not have appeared on the label, ... plaintiff's claim was a direct challenge to the information contained on the label and thus was preempted by FIFRA"); *Wadlington v. Miles, Inc.*, 922 S.W.2d 520, 524–25 (Tenn.Ct.App.1995) (claims based on allegations that manufacturer of termiticide knew and yet failed to inform customers that its product did not provide effective protection against infestation and damage by termites constituted challenge to EPA-approved label and were preempted).

the opinion that all of plaintiff's state law claims are preempted by FIFRA.

Regarding efficacy-based claims in general, plaintiff inexplicably argues, in the face of *Andrus*, that "[t]he Fifth Circuit has never directly addressed whether efficacy claims survive FIFRA preemption." That plainly is not correct, for the very issue the court addressed in *Andrus* was "whether [FIFRA] preempts state law claims alleging that a herbicide failed to perform as specified on the product label...." Perhaps what plaintiff actually meant to say was that the Fifth Circuit has never directly addressed whether efficacy claims survive FIFRA preemption where EPA regulations do not require EPA review of product efficacy claims and the proof shows that the EPA did not, in fact, review the particular product to determine whether it met the manufacturer's efficacy claims. The court assumes this is what he meant, since this is what plaintiff contends occurred with respect to Terminate. Were that what actually did occur here, this court would indeed be called upon to address the issue without guidance from the Fifth Circuit, or from any other court, for that is an issue which no court has heretofore confronted, at least so far as the court has been able to discern. However, that is not the scenario presented in this case.

It is true, as plaintiff points out, the Administrator of the EPA, "[i]n considering an application for the registration of a pesticide, ... may waive data requirements pertaining to efficacy, in which event the Administrator may register the pesticide without determining if the pesticide's composition is such as to warrant the proposed claims of efficacy." 7 U.S.C. § 136a(c)(5). Contrary to plaintiff's urging, it does not appear that the Administrator waived such requirements with respect to Terminate, or that it registered Terminate without evaluating United's efficacy claims.

EPA regulations state, at 40 C.F.R. § 158.640(b)(1), that

[t]he Agency has waived all requirements to submit efficacy data unless the pesticide bears a claim to control pest microorganisms that pose a threat to human health and whose presence cannot readily be observed by the user including, but not limited to, microorganisms infectious to man in any area of the inanimate environment, or a claim to control vertebrates (such as rodents, birds, bats, canid, and skunks) that may directly or indirectly transmit diseases to humans.

While plaintiff has apparently assumed that this abdication of authority over pesticide efficacy claims was intended by the EPA to extend to termiticides, his assumption is belied by the EPA Label Review Manual (2d Edition), which expressly includes products intended for the control of "termites" as among those "products requiring submission of efficacy data."[4] Moreover, rebuttal evidence submitted by defendants discloses that United did submit efficacy data on Terminate to the EPA which reviewed and approved it.[5] Accord-

---

**4.** The Manual states, in more detail, the following:

*Efficacy Related Claims*
Efficacy data (also referred to as product performance data) generally are only required to be submitted for products claiming to control pests which pose a threat to human health, either by direct action or through transmission of diseases (40 Code of Federal Regulations (CFR) 158).

...

**Products Requiring Submission of Efficacy Data**
...

**2.** *Invertebrate Control*—Products intended for use in or on humans (or in or on pets for control of pests which attack humans) such as fleas, ticks, mosquitoes, and biting flies and in premises or in the environment to control pests of sanitary or public health significance such as the above as well as *termites,* wasps, scorpions, poisonous spiders, fire ants, cockroaches, centipedes and bedbugs.
(Emphasis added).

**5.** Though defendants moved under Rule 12(b)(6) to dismiss for failure to state a claim, plaintiff submitted evidence in support of his

ingly, plaintiff's argument that no federal efficacy review was required or conducted with respect to Terminate is simply incorrect.

Furthermore, based on the allegations of his complaint, it is evident that plaintiff's further argument by which he attempts to save these claims from FIFRA preemption lacks merit. Plaintiff contends that even if his label-based claims are preempted by FIFRA, his complaint is not concerned solely with the Terminate label, but alleges as well that United, in addition to the statements on the label, made false efficacy statements or omissions of statements in its advertisements of Terminate. These claims, plaintiff submits, are not covered by FIFRA preemption.

In the court's opinion, had plaintiff alleged that United made off-label statements about Terminate that were substantially different from those contained on the label, then, as evidenced by the Fifth Circuit's opinion in *Andrus*, the question whether such claims were preempted by FIFRA would at least be debatable. In addressing a similar assertion by the *Andrus* plaintiff that his claims were saved from preemption because they were not based solely on the label but were also based on assurances by a manufacturer's representative that the product at issue would be effective to handle his weed problem, the court made it clear that a plaintiff "cannot automatically avoid FIFRA preemption simply because [he] challenge[s] alleged misrepresentations that were made separately from the label." *Andrus*, 178 F.3d at 400 (quoting *Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 662 (7th Cir. 1997)). The court went on to explain that

> "[a]ccording to the Fourth Circuit, when advertising or promotional materials merely repeat information or language contained in the label, claims directed at the advertising necessarily challenge the

claim that the EPA did not evaluate any efficacy data on Terminate. Defendants responded with their own proof, which shows that there was such review and approval.

label itself and are therefore preempted[,]" [while] [t]he Ninth and Eleventh Circuits go farther, holding that "any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of warnings provided on the product's labeling or packaging" and therefore are preempted. *Under both approaches, FIFRA preempts state law claims when the challenged advertising merely reiterates the label.* The difference is that the Fourth Circuit holds that FIFRA allows state law claims against advertisements that "substantially differ" from the label, while the Ninth and Eleventh Circuits hold that FIFRA preempts these claims as well.

*Id.* at 400 (emphasis added) (quoting *Kuiper*, 131 F.3d at 662); *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129–30 (4th Cir.1995); *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 561 (9th Cir.1995); *Papas v. Upjohn Co.*, 985 F.2d 516, 518 (11th Cir.1993) The Fifth Circuit in *Andrus* found it unnecessary to choose between these two approaches since the plaintiff, in response to the defendant's summary judgment motion, had failed to introduce any evidence that the defendant's representative had provided any advice not contained on the product label. Thus, the plaintiff "could not rely on [the representative's advice] to avoid preemption under FIFRA." *Id.*

In the case at bar, while plaintiff argues in his reply memorandum that he has "presented numerous misrepresentations made by defendants in addition to those made on the product label," he has not alleged or identified any representations by United concerning Terminate that are different in any respect from those contained on the Terminate label. On the contrary, plaintiff specifically alleges in his complaint that all of the Terminate label claims are "consistent with and substan-

Because the court has considered the parties' evidence on this point, it would be appropriate to treat the motion as a summary judgment motion.

tially the same as those uniformly distributed as part of the defendants [sic] wrongful marketing scheme," and that United "uniformly represented, through packaging and other advertising, that Terminate was an effective method of controlling termites, [et cetera]." Thus, regardless of whether the Fifth Circuit might ultimately select the Ninth and Eleventh Circuits' approach to off-label claims, or the Fourth Circuit's "substantially different" approach, since plaintiff herein, irrespective of what he may have *argued* in his brief, has not alleged that United made any representations about Terminate in its marketing of the product that were even slightly different from those contained on or omitted from the product label, then his off-label claims, like his label-based claims, are preempted.[6]

Plaintiff finally contends with respect to defendants' preemption argument that if FIFRA preemption applies in this case at all, it applies only to his claims of negligent misrepresentation and breach of implied warranties, and does not extend to any of his other claims, including in particular his fraud, unjust enrichment, breach of express warranty, RICO and conspiracy claims. As to all of plaintiff's state law claims, the court concludes otherwise.

■ It is true, as plaintiff urges, that "not all common law claims relating to herbicides [or pesticides] are preempted by FIFRA—'[section] 136v(b) does not preempt common law that is unconcerned with herbicide [or pesticide] labeling, nor does it preempt those state laws concerned with herbicide [or pesticide] labeling that do not impose any requirement in addition to or different from the FIFRA requirements'." *Andrus*, 178 F.3d at 398 (quoting *MacDonald*, 27 F.3d at 1024). However, where the " 'undeniable practical effect' of [the plaintiff's] recovering a large damage award on his claims that the manufacturer

failed to meet state labeling requirements ... would be the imposition of additional labeling standards not mandated by FIFRA, ... such claims are preempted." *Id.* at 398–99 (citing *MacDonald*, 27 F.3d at 1025). In this case, regardless of the specific legal theories by which he presents these claims, it is manifest that plaintiff's fraud, unjust enrichment, breach of express warranty and conspiracy claims, based, as they are, on nothing more than plaintiff's allegation that United should have made additional and/or different representations regarding the efficacy of Terminate than those which appeared on its EPA-approved label, would, if successful, have the "undeniable practical effect" of imposing "additional labeling standards not mandated by FIFRA." That is, these claims, regardless of how characterized, all challenge the content of the label and are thus preempted. *Cf. Etcheverry v. Tri–Ag Serv., Inc.*, 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 48, 993 P.2d 366, 377 (2000) ("When a claim, however couched, boils down to an assertion that a pesticide's label failed to warn of the damage plaintiff allegedly suffered, the claim is preempted by FIFRA."). In light of the plaintiff's arguments, however, the court's conclusion as to some of these claims, namely the fraud and breach of express warranty claims, bears further elaboration.

Plaintiff argues that his intentional misrepresentation claim is not preempted, according to the reasoning of the Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S.Ct. 2608, 2622, 120 L.Ed.2d 407 (1992), since his fraud claim is based not on a duty expressly prescribed by federal statute but rather on a more general duty not to deceive. However, in the court's opinion, *Cipollone* does not support plaintiff's conclusion. In *Cipollone*, which involved questions as to the preemptive scope of § 5(b) of the Public Health

---

**6.** The court would note, too, that plaintiff not only has not alleged any additional non-label misrepresentations by United but he has not "presented" or even so much as hinted at the

nature of any representations that may have been different from those contained on the EPA-approved label for Terminate.

Cigarette Smoking Act of 1969, the plaintiffs alleged two theories of fraudulent misrepresentation, one of which was held to be preempted and the other of which was not. *Id.* at 526, 112 S.Ct. at 2622. "First, [plaintiffs] allege[d] that [defendants], through their advertising, neutralized the effect of federally mandated warning labels." *Id.*, 112 S.Ct. at 2622. The plurality found that this claim was ultimately predicated on "a state-law requirement that warnings be included in advertising and promotional materials," and was thus preempted. *Id.* at 527, 112 S.Ct. at 2623. Plaintiff's second theory, which "allege[d] intentional fraud and misrepresentation both by 'false representation of a material fact [and by] conceal[ment of] a material fact,'" was held not to be preempted. *Id.* at 527, 112 S.Ct. at 2623. As "[t]he predicate of this claim [was] a state-law duty not to make false statements of material fact or to conceal such facts," the question was "whether such a duty is the sort of requirement or prohibition proscribed by § 5(b)." *Id.*, 112 S.Ct. at 2623. The plurality explained that the preemptive reach of the Act was limited to state-law obligations "with respect to the advertising or promotion" of cigarettes. The plaintiffs' claims, insofar as they relied on a state-law duty to disclose facts through channels of communication other than advertising or promotion, were not preempted. *Id.* at 528, 112 S.Ct. at 2623. Moreover, those which did arise with respect to advertising and promotions—"most notably claims based on allegedly false statements of material fact made in advertisements"—were held not to be preempted, because those claims "were predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528–29, 112 S.Ct. at 2623–24. Based on its review of the history and terms of the Act, the Court concluded that Congress had not intended to insulate cigarette manufacturers from longstanding rules governing fraud and had instead intended that "the phrase 'relating to smoking and health' was to be construed narrowly, so as not to proscribe the regulation of deceptive advertising." *Id.* at 529, 112 S.Ct. at 2624.

The reasoning of the *Cipollone* plurality by which it arrived at the conclusion that the fraud claim was preempted carries no weight in the FIFRA context. It does not support plaintiff's assertion that his intentional misrepresentation claim is not preempted by FIFRA; if anything, it suggests a contrary conclusion. Plaintiff's claim in this case, though arguably more akin to the *Cipollone* plaintiffs' second theory of fraudulent misrepresentation, is subject to a preemption provision under FIFRA which differs in scope from that under consideration in *Cipollone*. Unlike § 5(b) of the Public Health Cigarette Smoking Act of 1969, which limits the preemptive force of that Act to state laws "based on smoking and health," FIFRA § 136v(b) broadly preempts "any requirements" that arise under state law, suggesting that Congress did intend, via FIFRA, to proscribe the regulation of deceptive advertising. Plaintiff's fraud claim is thus preempted. *See Graves v. Metrex Research Corp.*, No. CV91 505710, 1995 WL 416292, at *6 (Conn.Super.Ct.1995) (holding plaintiff's misrepresentation claim preempted where the only alleged misrepresentations shown by plaintiff were those contained in their labeling or safety data sheet); *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F.Supp. 597, 601 (D.Idaho 1994) (plaintiff's intentional fraud and misrepresentation claims, as they were based on statements made on the pesticide label, were preempted).

Plaintiff also argues, based on the following passage from the plurality opinion in *Cipollone*, that "a breach of warranty claim based upon a defendant's express warranty is not preempted":

A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the "requirements" imposed by an express warranty claim are not "imposed under state law," but

rather imposed by the warrantor.... In short, a common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement ... imposed under state law" [for purposes of preemption].

This language would support the plaintiff's position *if* the warranty alleged to have been made by United was in fact made voluntarily; however, the courts that have addressed this issue have concluded that express warranty claims based on statements on or from EPA-approved labels are not "voluntarily undertaken" by the manufacturer, but rather are imposed on the manufacturer by the EPA. *See Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 72 (8th Cir.1995) (rejecting plaintiff's attempt to employ plurality's analysis in *Cipollone* to save their express warranty claim for preemption; since their express warranty claim was based entirely on statements included in the EPA-approved label, the *Cipollone* plurality's exception for "voluntarily undertaken" commitments could not be applied). Thus, although an express warranty claim likely would not be preempted if a plaintiff shows that the defendant conveyed information or made assurances that went beyond the product label, breach of express warranty claims are preempted to the extent they are based upon inadequacies in labeling or packaging. *See id.*; *see also Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 562 (9th Cir.1995) (breach of express warranty claim held preempted to the extent it was "predicated upon a duty to provide information in addition to or different from that required by FIFRA"); *Lowe v. Sporicidin Int'l,* 47 F.3d 124, 129 (4th Cir.1995) ("[A]n express warranty claim based on EPA-approved labeling materials is preempted."); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 749 (4th Cir.1993) (breach of express warranty claims were preempted where representation at issue was not voluntary but was required and approved by the EPA); *cf. Hughes v. Tennessee Seeds of Brownsville, Inc.,* 970 S.W.2d 471, 477 (Tenn.Ct.App.1997) (express warranty claims were not preempted where record contained evidence that defendants, through their agents, voluntarily made representations as to their product's suitability or effectiveness which representations exceeded or differed from the information contained in the product's label).

■ Based on the foregoing, the court concludes that plaintiff's state law claims are expressly preempted by FIFRA and thus are due to be dismissed. As defendants acknowledge, however, the same preemption analysis does not apply to plaintiff's RICO claims since FIFRA's preemption provision applies only to requirements imposed by the states and not requirements that derive from other federal statutes. Nevertheless, defendants maintain that since Congress has placed responsibility for pesticide labeling within the exclusive jurisdiction of the EPA, then RICO claims which impinge upon that field should similarly be held to be "preempted."

In *People ex rel. Lungren v. Cotter & Co.,* 53 Cal.App.4th 1373, 1389–90, 62 Cal. Rptr.2d 368, 379–80 (1997), the court

Rather than creating a mere labeling statute, Congress in 1972, "transformed [FIFRA] into a comprehensive regulatory statute governing the use and sale of pesticides." One ... [case], [*Taylor AG Indus. v. Pure–Gro,* 54 F.3d 555, 560 (9th Cir.1995) ], noted the "rigorous label-approval process under FIFRA." The court explained: "Although FIFRA does not prescribe the exact contents of labels, manufacturers are not free, ... to create pesticide labels in any manner they choose. Rather, ... the EPA approves each label only after a careful review of the product data and the draft label." (*Ibid.*)

... Not only does FIFRA define "label" expansively, but it represents a situation "in which the Federal Government has weighed the competing interests relevant to the particular requirement in question, reached an un-

ambiguous conclusion about how those competing considerations should be resolved in a particular case or set of cases, and implemented that conclusion via a specific mandate on manufacturers or producers" [*Medtronic Inc. v. Lohr*, (1996) 518 U.S. 470, 479, 116 S.Ct. 2240, 2258, 135 L.Ed.2d 700].

*Id.* (additional citations omitted). *See also Welchert v. American Cyanamid, Inc.*, 59 F.3d at 70 (quoting *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir. 1993)) (" 'The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use of pesticides.' "). Under FIFRA, responsibility for regulating allowable representations by pesticide manufacturers concerning their products, both as an initial matter via the complex review and approval process established by FIFRA and its associated regulations, and for enforcement purposes, is placed within the exclusive province of the EPA. *See Cottrell*, 191 F.3d at 1255 ("FIFRA is exclusively enforced by the [EPA]."); Papas v. Upjohn Co., 985 F.2d 516, 518 (11th Cir.) ("[I]t is for the EPA Administrator ... to determine whether labelling and packaging information is complete or inaccurate, and if so what label changes, if any, should be made"), *cert. denied*, 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993). Recognition of a RICO cause of action

premised on allegations that a pesticide manufacturer intentionally misrepresented or failed to disclose pertinent information concerning its product would obviously undermine the regulatory structure constructed by Congress. This would not only be inimical to the express congressional goal of uniformity in the regulation and sale of pesticides, but to allow a plaintiff to use RICO in such fashion would be to condone direct circumvention of the EPA's regulatory authority for the accomplishment of an end otherwise prohibited by Congress. Under these circumstances, the court is of the view that plaintiff's putative RICO claim may properly be treated as "preempted", for lack of a better word. *Cf. Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1228 (D.C.Cir.1991) ("[W]here it is plain that the [federal Service Contract Act] creates no private remedy[,] ... [t]o frame the action for such remedy in terms of RICO adds nothing"; "the statutory scheme for administrative relief set forth by Congress in the [SCA] leaves no room for a RICO action on the present allegations.") [7]; *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1256 (10th Cir.1999) (refusing to limit scope of Lanham Act "absent circumstances that inherently require interpretation of FIFRA regulations and/or EPA approvals"); *Braintree Labs., Inc. v. Nephro–Tech, Inc.*, No. 96–2459–JWL, 1997 WL 94237, at *6 (D.Kan.

---

**7.** While the district court in *Danielsen* concluded that "the SCA had 'preempted' th[e] [particular] area of law to the exclusion of RICO," *Danielsen*, 941 F.2d at 1226, the appellate court had "a slight semantic difficulty with the use of the word 'preemption' for the concepts [it was considering]," *id.* at 1227. The court stated,

> We recognize that this use of "preempt" is not inconsistent with uses of that word in the labor law context. For example, in *Amalgamated Association of Street, etc. v. Lockridge*, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971), the Supreme Court held that the NLRA "preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Most recent use of the

word in federal jurisprudence, however, generally has been in the context of the "preemption doctrine," which recognizes that "certain matters are of such a national, as opposed to local, character that federal laws pre-empt or take precedence over state laws." Black's Law Dictionary 1060 (West 5th ed.1979) (emphasis added). As the present case raises a narrower question, our task is more accurately described as determining whether there is a statutory provision of an exclusive remedy rather than the preemption of an entire field. Therefore, while we agree with the District Court in its conclusion, we differ in terminology.

*Id.* at 1227.

Feb.26, 1997) (quoted in *Cottrell*) ("[C]laims that require direct interpretation and application of the FDCA are not properly recognized because such matters are more appropriately addressed by the FDA, especially in light of Congress's intention to repose in that body the task of enforcing the FDCA."). For this reason, the court is of the opinion that plaintiff's RICO claims should be dismissed.

■ In addition to their arguments for dismissal based on preemption, defendants assert that all counts of the complaint should be dismissed due to plaintiff's failure to allege that he suffered any damage as a proximate result of his use of Terminate. The court agrees.

Each cause of action set forth in plaintiff's complaint is based on allegations that Terminate was not effective as represented by defendants; yet nowhere in his complaint does plaintiff allege, other than conclusorily, either that the product actually failed to perform in the manner represented or that he suffered any damage as a consequence of his use of Terminate. Plaintiff does broadly allege that he "has incurred damages proximately caused by defendants' misconduct and concealment ... includ[ing] ... monies paid for TERMINATE and damages associated with leaving his property unprotected by a properly applied chemical treatment barrier." But as plaintiff readily acknowledges, he filed this suit a mere eight days after purchasing Terminate, despite the fact that the Terminate label specifically advised, under the heading, "IMPORTANT USAGE NOTES":

> Results depend upon the species involved, weather, moisture, time of year, and may take 1–4 months or longer. Time required for effectiveness depends upon how quickly the terminates enter the stake and feed upon the bait.

While for reasons undisclosed ·by plaintiff in his complaint or otherwise, plaintiff may have suspected, within a· mere week of his purchase of the Terminate, that the product ultimately would not perform as repre-

sented and that his property would become damaged as a consequence, there is no allegation in the complaint, nor any arguable factual support for an allegation that the product did not perform as represented within the short term of plaintiff's use or that damages were sustained by plaintiff.

In *Briehl v. General Motors Corp.,* 172 F.3d 623 (8th Cir.1999), a case upon which defendants rely, the Eighth Circuit affirmed the district court's dismissal of the plaintiffs' complaint for the reason that the plaintiffs had not adequately pled damages. The opinion in *Briehl* reflects that the plaintiffs, owners of certain models of GM vehicles, had filed a class action complaint asserting claims for fraudulent misrepresentation, fraudulent concealment, breach of implied warranty, breach of express warranty and violation of state consumer protection statutes based on allegations that the braking systems in their subject vehicles, contrary to GM's representations as to ·their safety, were in fact unsafe and hence defective. The plaintiffs in *Briehl,* who admittedly had not sustained any actual personal injury or property damage due to having purchased vehicles with the allegedly defectively designed braking system, nevertheless claimed damages for lost resale value and overpayment for the vehicles at the time of purchase. *Id.* at 626. The court, though, held that because the plaintiffs had "failed to allege that any defect had actually manifested itself in their vehicles, [their] allegations of damages failed to meet the pleading requirements for defective products." *Id.* The mere allegation that the vehicles "suffer[ed] from defects" was an insufficient allegation of damages. The court specifically held that it was not enough that the product might be defective; the plaintiffs could not recover under any theory of recovery if the alleged defect ·did not manifest itself in the plaintiffs' vehicles. *Id.* In so concluding, the court identified numerous cases recognizing this basic principle, stating,

Courts have been particularly vigilant in requiring allegations of injury or damages in products liability cases. *Lee v. General Motors Corp.*, 950 F.Supp. 170, 171–74 (S.D.Miss.1996) (dismissing plaintiff's claims of inherently defective detachable fiberglass roofs for failure to plead sufficient damages); *Yost v. General Motors Corp.*, 651 F.Supp. 656, 657–58 (D.N.J.1986) (holding that complaint alleging design defect "likely to cause" damage failed to state a claim); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 603 (S.D.N.Y.1982) (holding no cause of action for defect which never manifests itself); *Pfizer v. Farsian*, 682 So.2d 405, 407 (Ala.1996) (holding that a plaintiff's belief that a product could fail in the future is not, without more, a legal injury sufficient to support plaintiff's claim); *Khan v. Shiley Inc.*, 217 Cal.App.3d 848, 857, 266 Cal.Rptr. 106 (1990) (holding plaintiff with inherently defective heart valve failed to state a claim unless the valve malfunctioned); *Zamora v. Shell Oil Co.*, 55 Cal.App.4th 204, 208, 63 Cal. Rptr.2d 762 (1997) (holding that, in the absence of a product malfunction, a plaintiff cannot establish that a defendant breached any duty owed); *Verb v. Motorola, Inc.*, 284 Ill.App.3d 460, 220 Ill.Dec. 275, 672 N.E.2d 1287, 1295 (1996) (dismissing claims against cellular telephone manufacturers alleging potential safety defects because "plaintiffs' future personal injury and damages claims constitute conjecture and speculation"). As one court has stated, "[l]iability does not exist in a vacuum; there must be a showing of some damage...." *Feinstein*, 535 F.Supp. at 602. "It is well established that purchasers of an alleg-edly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y.1997); *see also Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1453 (S.D.Tex.1996) (stating that where plaintiffs admittedly have not sustained any personal injuries relating to the seat belt restraint system in a vehicle, plaintiffs cannot succeed on any of their claims); *Yost*, 651 F.Supp. at 657–58 ("The basic problem in this case is that plaintiff Yost has not alleged that he has suffered any damages. He has not stated that the engine in his vehicle is defective in any way.").

*Id.* at 627–28. *See also Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1097 (5th Cir. 1991) (precluding claims where the plaintiffs "provided no evidence that their particular valves ... were not performing as designed").

In his response memorandum, plaintiff completely fails to address the manifestation-of-defect line of cases upon which defendants rely, yet argues that even without having sustained actual property damage, he is still entitled to recover the loss of the benefit of his bargain on his purchase of Terminate, as well as the purchase price of the Terminate. The point of the cases cited, though, is that unless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way. Mere suspicion of a lost bargain, as defendant puts it, will not support an award of damages. *See Briehl*, 172 F.3d at 628 ("Where a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies.").[8]

---

8. Of course, had plaintiff been desirous of recovering his purchase price, the Terminate product was accompanied by a limited warranty, which permitted him to return the product for a full refund if he was dissatisfied with the product "for any reason." Proof that the product did not perform satisfactorily was not a prerequisite to plaintiff's pursuing the refund offer but apparently the plaintiff elected to immediately pursue litigation rather than availing himself of this remedy. Indeed, the speed with which plaintiff managed to secure counsel, have a comprehensive class action complaint drafted and then file this lawsuit could lead one to question his motivation for purchasing the product in the first place.

For all of the foregoing reasons, the court concludes that defendants' motion to dismiss should be granted.

Accordingly, it is ordered that defendants' motion to dismiss is granted. It is further ordered that all remaining motions in this case are hereby denied as moot.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.