**Elizabeth RIVERA and the Arkansas Carpenters Health and Welfare Fund**

v.

**WYETH–AYERST LABORATORIES, A Division of American Home Products Corp. and American Home Products Corp.**

No. CIV. A. G–00–345.

United States District Court,
S.D. Texas,
Galveston Division.

Nov. 8, 2000.

Arthur Sadin, Youngdahl and Sadin,
Richard Lee Melancon, Melancon and Ho-

gue, Friendswood, TX, for Elizabeth Rivera, Arkansas Carpenters Health and Welfare Fund, plaintiffs.

Stephen Robert Lewis, Jr, Lewis & Williams, Galveston, TX, for Wyeth–Ayerst Laboratories Company, American Home Products Corporation, defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

KENT, District Judge.

This case involves a claim to recover economic damages resulting from the purchase of the prescription drug Duract, which has been taken off the market due its risk of causing liver damage. Plaintiffs bring claims on their own behalf and on behalf of a class of purchasers of Duract. Now before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. For the reasons stated below, Defendants' Motion to Dismiss is **DENIED.**

### I. BACKGROUND

Plaintiff Rivera purchased Duract, a nonsterodial anti-inflammatory drug used for the management of pain. Plaintiff Arkansas Carpenters Health and Welfare Fund ("Arkansas Fund") is a health plan which paid for some or all of Plaintiff Rivera's Duract expenses. Defendants introduced Duract in 1997, but withdrew the drug from the market some eleven months later following reports of liver damage among its users. Plaintiffs allege that prior to introducing Duract, Defendants were aware of the life threatening side-effects associated with it, even in people who use the medicine for less than ten days. Plaintiffs further contend that Defendants did not adequately disclose such side-effects to patients and physicians.

Plaintiffs filed this action to recover economic damages resulting from the purchase of Duract. They seek to represent a nationwide class of all purchasers of Duract, as well as entities which provided insurance coverage for Duract. Excluded from the class are those purchasers who suffered physical injury from the use of Duract. Plaintiffs assert claims for (1) violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE ANN. § 17.46 et seq., (Vernon Supp 1998) (2) breach of the implied warranty of merchantability under TEX. BUS. & COM. CODE ANN. § 2.314(a) (Vernon 1994); and (3) unjust enrichment.[1]

### II. LEGAL STANDARD

A party is entitled to dismissal under Fed.R.Civ.P. 12(b)(6) when another party fails to state a claim upon which relief may be granted. When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Builders Ass'n of Miss.,*

---

**1.** By the stipulation of the parties, Plaintiffs have voluntarily dismissed their claims for breach of an implied warranty for fitness for a particular purpose and an alleged private right of action under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 352, 331 (1994). Also, on July 25, 2000, in their First Amended Complaint, Plaintiffs added a claim for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. (1994). Plaintiffs' Second Amended Complaint, however, omits this RICO allegation. Thus, the Court need not consider these claims in ruling on Defendants' Motion to Dismiss.

*Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998) (applying the standard in the context of Rule 12(b)(1)); *Home Capital Collateral, Inc. v. FDIC,* 96 F.3d 760, 764 (5th Cir.1996) (applying the standard in context of Rule 12(b)(6)); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994) (Rule 12(b)(6)). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *See Mahone v. Addicks Util. Dist. of Harris County,* 836 F.2d 921, 926 (5th Cir.1988).

## III. *ANALYSIS*

Defendants assert three bases for dismissing Plaintiffs' claims. First, Defendants claim that Plaintiffs have alleged no recoverable damages under Texas law. Second, Defendants maintain that Plaintiff Arkansas Fund has no cognizable injury. Third, Defendants maintain that the "learned intermediary" doctrine mandates dismissal.

### A. *DTPA, Breach of Warranty, and Unjust Enrichment Claims*

The essence of Defendants' argument for dismissing all three of Plaintiffs' claims is that Plaintiffs obtained the benefit of the bargain: a medicine that relieved pain and caused them no physical injury.

#### 1. *DTPA*

Plaintiffs respond that section 17.50(b)(3) of the DTPA allows a prevailing consumer to obtain "orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter." Tex. Bus. & Comm. Code Ann. § 17.50(b)(3) (Vernon Supp.1998). Section 17.50(b)(3) functions as a kind of refund section. *See Schenck v. Ebby Halliday Real Estate, Inc.,* 803 S.W.2d 361, 366 (Tex.App.—Fort Worth 1990, no writ) (noting that § 17.50(b)(3) is a "statutory

recognition of the equitable remedy of recession and restitution").

Among the violations referenced in section 17.50 are "representing that goods or services are of a particular standard, quality, or grade," "failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," and "breach of an express or implied warranty." Tex. Bus. & Comm. Code Ann. §§ 17.46, 17.50 (Vernon Supp.1998). Plaintiffs have alleged that Duract was not what it was warranted to be, namely a safe pain reliever. Therefore, Plaintiffs have alleged facts sufficient to support a claim for violation under section 17.50. As such, they have adequately stated a claim for a refund of the purchase price of Duract under section 17.50(b)(3). The Plaintiffs need not allege physical injury to recover under the refund section of the DTPA. Indeed a claim for refund under section 17.50(b)(3) is inconsistent with a claim for physical damages. *See LSR Joint Venture No. 2 v. Callewart,* 837 S.W.2d 693 (Tex.App.—Dallas 1992, writ denied) (holding that "awarding actual damages and restoration of consideration paid are inconsistent remedies"). In short, Plaintiffs have a legally cognizable economic injury under the DTPA. Defendants' Motion to Dismiss Plaintiffs' DTPA cause of action is therefore **DENIED**.

#### 2. *Breach of Warranty*

Plaintiffs also allege breach of the warranty of merchantability under the Texas Uniform Commercial Code. Tex. Bus. & Comm. Code Ann. § 2.314(a) (Vernon 1998). Again, Defendants argue that Plaintiffs have suffered no cognizable damages.

A seller breaches the implied warranty of merchantability under section 3.214(b)(3) if it sells a product which is not "fit for the ordinary purpose for which

such goods are used ...." TEX. BUS. & COMM. CODE ANN. § 2.714 (Vernon 1998). Section 2.714 of the Texas U.C.C. sets out the measure of damages for breach of warranty:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods as accepted and the value that they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

TEX. BUS. & COMM. CODE ANN. § 2.714 (Vernons 1998). Plaintiffs contend that under this measure of damages, they are entitled to the full purchase price because the "value of the goods as accepted" was zero. Defendants' response, as the Court interprets it, is that because Duract did not manifest a defect in Plaintiffs' own experience with it, the "value of the goods as accepted" was equal to the "value that the [goods] would have had if they had been as warranted." Defendants argue essentially that Plaintiffs have artfully pleaded around the general rule preventing recovery for "inchoate wrongs." See Gideon v. Johns–Manville Sales Corp., 761 F.2d 1129, 1136 (5th Cir.1985); Coghlan v. Aquasport Marine Corp., 73 F.Supp.2d 769, 772 (S.D.Tex.1999) (Kent, J.) ("A federal court is not the proper forum in which to air metaphysical speculations about theoretical injuries.").

Defendants cite a litany of cases standing for the proposition that if a product functions properly in the case of a particular plaintiff, then that plaintiff is not entitled to recovery under a breach of warranty. See Briehl v. General Motors Corp., 172 F.3d 623, 627 (8th Cir.1999) (holding that a breach of warranty claim for a defective anti-lock brake system was properly dismissed because the brakes functioned properly in the Plaintiff's experience); Jarman v. United Indus. Corp., 98 F.Supp.2d 757, 767–68 (S.D.Miss.2000) (holding that failure to allege actual failure in termicide warranted dismissal of an im-

plied warranty claim); Weaver v. Chrysler Corp., 172 F.R.D. 96, 99 (S.D.N.Y.1997) (holding that there is no legally cognizable claim absent manifestation of the defect in product Plaintiff owned); Feinstein v. Firestone Tire & Rubber Co., 535 F.Supp. 595 (S.D.N.Y.1982) (holding that the purchaser of defective tires which did not malfunction had no claim for breach of implied warranty); Khan v. Shiley Inc., 217 Cal.App.3d 848, 266 Cal.Rptr. 106 (1990) (holding that a Plaintiff with a recalled heart valve did not have a claim for breach of warranty absent a showing that the valve malfunctioned). None of these cases, however, interpret Texas law. The one case of these within the Fifth Circuit, Jarman, does not support Defendants' position. In Jarman, the Court stated "it is not enough that the product might be defective; the Plaintiff could not recover under any theory of recovery if the alleged defect did not manifest itself in plaintiff's vehicle." Jarman, 98 F.Supp.2d at 767. Here, Plaintiffs do not claim that Duract "might be defective" but rather that Duract was defective. With a mass produced medication, consisting of one particular chemical compound, the medicine is either defective or it is not.

Other cases within the Fifth Circuit point in contradictory directions. In In re Ford Motor Co. Bronco II Prod. Liab. Litig., 1995 WL 491155 (E.D.La. August 15, 1995), Plaintiffs were the purchasers of allegedly defective Bronco IIs which did not produce injury or experience mechanical difficulty. The District Judge wrote: "Although plaintiffs do not allege that their Bronco II vehicles have actually rolled over or their vehicles have suffered any mechanical difficulties, I am not convinced that as a matter of law, the potentially fatal defect alleged by plaintiffs cannot form the basis of a breach of implied warranty claim." Id. at *10. In In Re Air Bag Prod. Liab. Litig., 7 F.Supp.2d 792 (E.D.La.1998), however, the District Court held that "plaintiffs have not alleged that a single air bag 'functioned improperly un-

der normal use,' which is a prerequisite for recovery under this theory." *Id.* at 803 (citations omitted). In *Coghlan,* 73 F.Supp.2d at 772, this Court held that purchasers of a boat which contained fiberglass coated wood was not entitled to recover absent a showing that the alleged defect caused injury. Similarly, in *Martin v. Ford Motor Co.,* 914 F.Supp. 1449 (1996) (Kent, J.), this Court held that buyers of defective seatbelts who suffered no injuries were not entitled to recover. These case, as well as cases involving tires, airbags, and the like can be distinguished. If for example, a person uses a defective tire which does not malfunction in his particular case, then that person has obtained the benefit of the bargain. With defective medicine, however, even if the medicine does not cause physical injury, the user may spend months or years worrying about potential illness caused by the medicine. Part of what people bargain for when they purchase medicine is a safe product which will not cause them worry. The Court cannot say as a matter of law that there was no breach of warranty, even absent physical injury, for a medicine with a revoked assurance of safety.

■ In any event, the Court must interpret the language of the statute in light of how a Texas court applying Texas law would rule on the issue. *See Mid–Continent Casualty Co. v. Swift Energy Co.,* 206 F.3d 487, 499 (5th Cir.2000); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The one Texas state case brought to the Court's attention which addresses the issue, *Microsoft Corp. v. Manning,* 914 S.W.2d 602 (Tex.App.—Texarkana 1995, writ dism'd), found breach of implied warranty despite the lack of actual injury. In *Microsoft,* the Plaintiffs were a class of purchasers of an allegedly defective software operating system. Similar to this case, the named

Plaintiff's only claimed injury consisted in the purchase of the product. *See Id.* at 607. The Court, nevertheless, held:

> if [Plaintiff] proves that an individual defect exists in all the original MS–DOS 6.0 software, it is not necessary for the purchasers to actually suffer a loss of data as a result of that defect for them to suffer damage. They received less than they bargained for when they acquired the product.

*Id.* at 609. Plaintiffs urge a similar resolution in this case.

■ The Defendants point to the Court's efforts to distinguish cases such as *Firestone.* In *Microsoft,* the Court wrote:

> Software, however, is not like tires or cars. Tires and cars have a distinctly limited usuable life. At the end of the product's life, the product and whatever defect it may have had passed away. If a defect does not manifest itself in that time span, the buyer has gotten what he bargained for. Software's useful life, however, is indefinite.

*Id.* at 609. Defendants argue that medicine is more like cars and tires than software in that medicine has a limited life span; obviously medicine lasts only as long as the patient refrains from ingesting it.[2] Because of the lingering effects of defective medicine, however, it can hardly be said that after its use, "the product and whatever defect it may have had have passed away." Nor can the Court say that a defective medicine, like a tire, has "lived [a] full productive li[fe]" and hence was "fit for the ordinary purpose for which it was used." *Firestone,* 535 F.Supp. at 599. In addition, the Court does not think that the Texas Supreme Court would adopt a blanket rule that would invalidate breach of warranty claims by purchasers who had not used up the medicine and were forced

---

**2.** In some sense, software also has a limited usuable life span as software has a tendency to become obsolete. Nevertheless, software is not consumable in the way that tires, cars, or medicine are. The remaining lifespan of software does not depend on the extent to which the purchaser has used it.

to throw it away.[3] When Defendants withdrew Duract from the market, they instructed purchasers of Duract not take it and to throw it out. In sum, the Plaintiffs have asserted a claim for damages for breach of warranty which can survive a motion to dismiss. Defendants' Motion to Dismiss Plaintiffs' breach of implied warranty claim is **DENIED.**

### 3. Restitution

 Furthermore, Plaintiffs have suffered a legally cognizable injury under a common law restitution or unjust enrichment theory. Under a restitution theory, Plaintiffs have a cause of action to the extent that Defendants were enriched at Plaintiffs' expense. *See HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 891 (Tex. 1998); *Intermarque Auto. Prod., Inc. v. Feldman,* 21 S.W.3d 544, 551 (Tex.App.— Texarkana 2000, n.w.h.). Unlike an action for damages, restitution focuses on a defendants' gain rather than a plaintiff's loss. Defendants may be entitled to an offset for any benefit conferred to the Plaintiffs. *See Smith v. Baldwin,* 611 S.W.2d 611, 617 (Tex.1980). Yet the Court cannot say as a matter of law that any offset in this case would outweigh the benefit conferred to Defendants. Nor is Plaintiffs' failure to return the medicine of significance as the medicine was "disposed of without knowledge of the grounds for restitution." *Restatement (Second) of Contracts* § 384(2)(b) (1991). In fact, Plaintiffs were instructed to throw out the medicine when Defendants pulled it from the market. Accordingly, Defendants' Motion to Dismiss Plaintiff's restitution claim is **DENIED.**

### B. Arkansas Fund's Damages

Defendants also claim that the Fund has not suffered compensable injury. They claim that at best the Fund is only an assignee of any legitimate claim by Plaintiff Rivera, and has a claim only to the extent that Plaintiff Rivera does. Thus, because the Court is unwilling to dismiss Plaintiff Rivera's claims, it declines to dismiss Arkansas Fund's claims. Consequently, Defendants' Motion to Dismiss the claims of the Arkansas Fund is **DENIED.**

### C. Learned Intermediary Doctrine

 Defendants argue that they satisfied their duty to warn by warning health care providers. Under the doctrine of the learned intermediary, "the fact that the manufacturer has adequately warned the prescribing physician will protect it from liability to the patient for failure to warn." *Hurley v. Lederle Lab.,* 863 F.2d 1173, 1178 (5th Cir.1988); *Reyes v. Wyeth Lab.,* 498 F.2d 1264 (5th Cir.1974); *Anderson v. Sandoz Pharm.,* 77 F.Supp.2d 804, 806 (S.D.Tex.1999) (Kent, J.); *Rolen v. Burroughs Wellcome Co.,* 856 S.W.2d 607, 609 (Tex.App.—Waco 1993, writ denied) (noting that though it has not been recognized by the Texas Supreme Court, the learned intermediary doctrine has been recognized by many intermediary appellate courts). Moreover, the learned intermediary doctrine applies to claims under the DTPA. *See In re Norplant Contraceptive Products Liability,* 165 F.3d 374, 377–78 (1999) (making the "Erie guess" that the Texas Supreme Court would hold the learned intermediary doctrine is a common law doctrine, as opposed to a common law defense, and hence applicable to the DTPA).

 The learned intermediary doctrine, however, is not a reason to dismiss under 12(b)(6) in this case. First, Plaintiffs have alleged that Defendants have failed to warn doctors in addition to consumers and pharmacists. Second, even if Defendants did warn physicians, the learned intermediary doctrine does not govern the adequacy of the warning. *See*

---

**3.** *Cf. Id.* at 609 ("[W]e have no way of knowing how many users were dissuaded from using [the software] because of the risk of data loss and the well-publicized reports of

the perceived defect. The purchasers may have paid for a data compression feature that they were afraid to use.").

*Hurley,* 863 F.2d at 1178. Thus, since Plaintiffs allege that the warnings were inadequate, to whom the warnings were given is of no moment. For these reasons, Defendants' Motion to Dismiss based on the learned intermediary doctrine is **DENIED.**

### III. *CONCLUSION*

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED** in its entirety. Each party is ordered to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**