Elizabeth **RIVERA** and the Arkansas Carpenters Health and Welfare Fund

v.

**WYETH–AYERST LABORATORIES, A Division of American Home Products Corp. and American Home Products Corp.**

Civ.A. No. G–00–345.

United States District Court, S.D. Texas, Galveston Division.

Nov. 29, 2000.

Arthur Sadin, Youngdahl and Sadin, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Elizabeth Rivera and Arkansas Carpenters Health and Welfare Fund.

Stephen Robert Lewis, Jr, Lewis & Williams, Galveston, TX, for Wyeth–Ayerst Laboratories Company and American Home Products Corporation.

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

KENT, District Judge.

This case involves a claim to recover economic damages resulting from the purchase of the prescription drug Duract, which has been taken off the market due its risk of causing liver damage. Plaintiffs bring claims on their own behalf and on behalf of a class of purchasers of Duract. Now before the Court is Plaintiffs' Motion for Class Certification. For the reasons stated below, Plaintiffs' Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Rivera purchased Duract, a nonsterodial anti-inflammatory drug used for the management of pain. Plaintiff Arkansas Carpenters Health and Welfare Fund ("Arkansas Fund") is a health plan which paid for some or all of Plaintiff Rivera's Duract expenses. Defendants introduced Duract in 1997, but withdrew the drug from the market some eleven months later following reports of liver damage among its users. Plaintiffs allege that prior to introducing Duract, Defendants were aware of the life threatening side-effects associated with it, even in people who use the medicine for less than ten days. Plaintiffs further contend that Defendants did not adequately disclose such side-effects to patients and physicians.

Plaintiffs seek to recover economic damages resulting from the purchase of Duract. They assert claims for: (1) violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex.Bus. & Com.Code Ann. § 17.46 et seq. (Vernon Supp.1998); (2) breach of the implied warranty of merchantability under Tex.Bus. & Com.Code Ann. § 2.314(a) (Vernon 1994); and (3) unjust enrichment.[1] Plaintiffs do not allege physical injury as a result of the use of Duract.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to certify a nationwide class of purchasers of Duract. The proposed class includes "individual consumers who purchased the prescription drug Duract, marketed and sold by Defendants, and who have not manifested signs of physical injury resulting from Defendants' conduct, health insurance companies, managed care organizations, self-funded health benefit plans, and other private entities that have provided prescription drug coverage and expended funds for Duract under private plans

1. By the stipulation of the parties, Plaintiffs have voluntarily dismissed their claims for breach of an implied warranty for fitness for a particular purpose and an alleged private right of action under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 352, 331. Also, on July 25, 2000, in their First Amended Complaint, Plaintiffs added a claim for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Plaintiffs' Second Amended Complaint, however, omits this RICO allegation.

with individuals or their employers." Excluded from the class are, "purchasers or users of Duract who have manifested physical injury allegedly as a result of taking said drug and the officers, directors or immediate family of any officer or director of Defendants."

## II. STANDARD FOR CLASS CERTIFICATION

■ The party seeking class certification has the burden of showing that the requirements for a class action have been met. *See, e.g., Applewhite v. Reichhold Chem., Inc.*, 67 F.3d 571, 573 (5th Cir.1995); *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. Unit A 1981). Under Rule 23(a), the following four prerequisites must be met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, Plaintiff must satisfy one of the elements of Rule 23(b). Here, Plaintiff seeks to certify a class under Rule 23(b)(3), which requires that the Court find both that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Zeidman*, 651 F.2d at 1038. District Courts have wide discretion in deciding the issue of certification, and the standard for review is abuse of discretion. *See id.; Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471–72 (5th Cir.1986). However, a District Court is required to conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996); *Applewhite*, 67 F.3d at 573.

In the instant case, Defendants claim that Plaintiffs lack standing to prosecute the action on behalf of the class. In addition, Defendants contest the class certification requirements of adequate representation, predominance, and superiority. The Court nevertheless finds that the requirements for class certification have been met. Consequently, Plaintiffs' Motion for Class Certification is **GRANTED.**

## III. ANALYSIS

### A. Standing

■ As a preliminary matter, the Court considers Defendants' contention that Plaintiffs lack standing to prosecute the class action. Defendants argue that Plaintiffs lack standing because they did not suffer physical injury from the use of Duract. As the argument was addressed in Defendants' Motion to Dismiss, which the Court denied in a previous order, Defendants cannot relitigate the issue here. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (19734) (noting that a court may not consider the merits of a Plaintiff's case in ruling on class certification). The Court has found that Plaintiffs have standing to bring claims despite the lack of physical injury. *See Rivera v. Wyeth–Ayerst Labs.*, 121 F.Supp.2d 614 (S.D.Tex.2000).

### B. Rule 23(a) Prerequisites

#### 1. Numerosity

■ The first prerequisite to a class action under Rule 23(a) is that "the class is so numerous that joinder of all members of the class is impractical." There is no threshold size for a class action, and the issue of numerosity must be determined on a case by case basis. *See* 7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1762 (1986). The burden of showing impracticability rests with the class representative seeking certification. The class representative need not determine exactly how many members the class will contain, but on the other hand, should not engage in mere speculation as to the size of a class. *See Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F.Supp.2d 456, 460 (E.D.Pa.1998). The

Court generally errs on the side of finding numerosity as the Court can decertify a class at any time. *See Leszczynski v. Allianz Ins.,* 176 F.R.D. 659, 670 (S.D.Fla.1997).

In this case, potential class members number in the tens of thousands. Furthermore, the class contains members from across the nation. Thus, it is apparent that joinder would be impractical. *See Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir.), *cert. denied,* 528 U.S. 1159, 120 S.Ct. 1169, 145 L.Ed.2d 1078 (2000) (holding that a class with 100 to 150 members is generally within the range satisfying the numerosity requirement). The numerosity requirement is met.

### 2. Commonality

■■■■ The second prerequisite to a class action under rule 23(a) is that "there are questions of law or fact common to the class." The test is not demanding and only requires that "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen,* 186 F.3d at 625; *accord Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 426 (5th Cir.1997); *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). *But see Applewhite,* 67 F.3d at 573 (holding that the class must have two issues in common). A common question is defined as "one which when answered as to one class member, is answered to all of them." *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F.Supp.2d 942, 954 (E.D.Tex.2000) (citing *Forbush* ).

Common questions of law and fact in this case include: 1) whether Defendants engaged in deceptive marketing; 2) whether Defendants breached any express or implied warranties; 3) whether Defendants' warnings were adequate; 4) whether Defendants failed to disclose information regarding the safety of the product; 5) whether the product was in fact safe; 6) whether Defendants were aware of the risk when they introduced the product; and 7) whether Defendants were unjustly enriched. These questions, when answered for one class member, are answered for all. Thus, the commonality requirement is met.

### 3. Typicality

■■■■ The third prerequisite to a class action under rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Like the commonality requirement, the threshold for typicality is not high. *See Mullen,* 186 F.3d at 625. The Court's inquiry focuses on "the similarity between the named Plaintiff's legal and remedial theories and the theories of those whom they purport to represent." *Id.; accord Jenkins,* 782 F.2d at 472. The typicality prerequisite, like the adequacy prerequisite, ensures that the class plaintiff will advance the interest of absent class members. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 (noting that typicality serves as a guidepost for determining "whether the named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"). One chief purpose of the typicality requirement is to prevent representation of a class by a representative who is "preoccupied with a defense which is applicable only to himself." *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 747 (5th Cir.1984). The concern is that "the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that representation of the rest of the class will suffer." *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.,* 628 F.2d 994, 999 (7th Cir.1980).

In this case, the named Plaintiffs appear to be typical purchasers of Duract. There is no indication that they will be preoccupied with defenses applicable only to themselves. Thus, the typicality requirement is met.

### 4. Adequate Representation

■■■■ The fourth prerequisite to a class action under rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class." The test focuses upon the adequacy of both the class representative and the class counsel. *See* Wright et al., *supra* § 1765.

Because Plaintiffs' claims are typical of the claims of the members of the proposed class, the class representatives' interests are

aligned with those of the class. In this way, the typicality and adequate representation requirements merge. *See Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370. Furthermore, the attorneys for the proposed class are amply qualified to prosecute a class action of this nature and scope.

Defendants argue that the class representatives are not adequate because the consumers and third-party payers may have a potential conflict. They claim that in the case of a settlement, consumers and third-party payers will have a conflict regarding priority of repayment. Thus, Defendants argue that Plaintiffs' counsel cannot represent both groups. In the unlikely event that a conflict does occur over allocation of damages or settlement funds, however, the Court can divide the class into two subclasses consisting of consumers and insurers, appointing separate counsel for each. *See* Fed.R.Civ.Pro. 23(c)(4)(A) (allowing the Court to create subclasses); *Payne v. Travenol Lab., Inc.,* 673 F.2d 798, 812 (5th Cir.1982) (noting that when a court discerns a conflict which prevents one group from representing all classes, the optimal solution is the creation of subclasses). This speculative conflict raised by Defendants presents no barrier to class certification. *See Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) (holding that conflicts on damages do not usually defeat class certification); *Kalodner v. Michaels Stores, Inc.,* 172 F.R.D. 200, 208 (N.D.Tex. 1997) (noting that conflicts on damages do not preclude class certification unless imminent and at the very heart of the suit). The adequacy of representation requirement is met.

### C. *Rule 23(b)(3) Requirements*

In addition to meeting the prerequisites listed in Rule 23(a), the Plaintiff must meet at least one of the requirements of Rule 23(b). In this case, the Plaintiffs rely on Rule 23(b)(3) which allows a District Court to maintain a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### 1. Predominance

 Defendants argue that individual issues of reliance and causation predominate over common issues. Individual issues of reliance will defeat the predominance requirement. *See Castano,* 84 F.3d at 745 ("[A] fraud class action cannot be certified when individual reliance will be an issue."); *Young v. Nationwide Life Ins. Co.,* 183 F.R.D. 502, 508 (S.D.Tex.1998) (Kent, J.) (quoting *Castano* ).

 Defendants contend that the learned intermediary doctrine creates the necessity of an individualized treatment. Under the learned intermediary doctrine, the manufacturer of a prescription drug discharges his duty to warn by supplying an adequate warning to the prescribing physician. *See Hurley v. Lederle Labs.,* 863 F.2d 1173, 1178 (5th Cir.1988); *Reyes v. Wyeth Labs.,* 498 F.2d 1264, 1275 (5th Cir.1974). Defendants argue that the Court will have to determine whether each particular physician relied on the allegedly inadequate warning in prescribing Duract. This argument lacks merit. As explained in this Court's order denying Defendants' Motion to Dismiss, the learned intermediary doctrine governs to whom warnings must be given, not the adequacy of the warnings. *See Rivera,* 121 F.Supp.2d at 620–21; *see also Hurley,* 863 F.2d at 1178. Plaintiffs allege that Defendants gave inadequate warnings to *both* patients and physicians. Moreover, Defendants concede that Duract was taken off the market because *"no* labeling change" would be sufficient. Defendants' Response In Opposition to Plaintiffs' Motion for Class Certification, at 5. The crux of Plaintiffs' case is the safety of Duract, an issue which does not require any individualized treatment. In short, in this case for economic damages, the learned intermediary doctrine simply does not apply. After the risks associated with Duract became clear to Defendants and they took the drug off the market, Defendants specifically instructed class members not to take Duract and to throw the medicine out. The class Plaintiffs were left with a com-

pletely worthless product. Defendants can hardly avoid liability by claiming that they warned doctors; the learned intermediary doctrine is not the doctrine of caveat emptor.

Defendants also contend that variations in state law defeat predominance. Variations in state law may swamp common issues in certain cases. *See Castano*, 84 F.3d at 743–44. Plaintiffs have the burden of demonstrating that variations in state law do not defeat predominance. *See Spence v. Glock*, 227 F.3d 308, 313 (5th Cir.2000) (decertifying a class because Plaintiffs failed to provide an extensive analysis of state law variations); *Castano*, 84 F.3d at 742. Defendants argue that state consumer protection laws vary from jurisdiction to jurisdiction, with some states not even recognizing a private right of action under their statutes. To support this assertion, though, Defendants cite cases involving statutes regulating insurance practices. *See Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 661 (4th Cir.1986) (noting that there is no private right of action under Virginia's unfair insurance practices act); *Simmons v. Prudential Ins. Co.*, 641 F.Supp. 675, 684 (D.Colo.1986) (holding that there is no private right of action under a statute regulating insurance practices). These cases are clearly not on point given that Plaintiff's claims do not allege unfair insurance practices. The one case that Defendants cite which does stand for the correct proposition has been overruled. *See Holbert v. Echeverria*, 744 P.2d 960, 961 (Okla.1987) (noting that there is no private right of action under Oklahoma's consumer protection act), *overruled by Walls v. Am. Tobacco Co.*, 11 P.3d 626, 628 (Okla.2000) (noting that after *Holbert*, the legislature amended the statute in 1988 to confer a private right of action). Similarly, Defendants' demonstration of variations in state law regarding fraud, comparative negligence, and assumption of the risk are irrelevant. Plaintiffs bring neither a fraud nor a negligence action. Moreover, Defendants cite no case law demonstrating that there is significant variation among state breach of warranty and restitution laws.

Plaintiffs respond that in a recent, similar nationwide class action, the same Defendants as in this case were able to fashion a settlement involving claims of injury and economic loss for all class members. They attach to their brief the Official Court Notice of Nationwide Diet Drug Class Action Settlement. That case, however, involved a settlement-only class certification. *See In re Diet Drugs Prod. Liab. Litig.*, 2000 WL 1222042 (E.D.Pa. Aug.28, 2000). As such, the Court considered the predominance requirement only in light of the proposed settlement. *See id.* at * 40 (noting that settlement is relevant to the class certification requirements in a settlement-only class certification); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 2247, 138 L.Ed.2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). Thus, discussion of state law variations in *In re Diet Drugs* is scant. *See id.* at *42 ("[D]ifferences in state law . . . do not destroy class cohesion because the settlement agreement provides for distribution of benefits based on the objective criteria described therein.")

Nevertheless, under Federal Rule of Civil Procedure 23(c)(1), a Court must determine whether a class action is maintainable "as soon as practicable." Moreover, under Rule 23(c)(4)(A), the Court may divide a class into subclasses. The Court can overcome difficulties created by variations in state law through the judicious use of subclasses. *See Spence*, 227 F.3d at 313 (implying that a plaintiff can use subclasses to overcome difficulties created by varying state laws); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 n. 15 (5th Cir.1998) (holding that plaintiffs failed to meet their certification burden by not offering a workable subclass plan). Thus, keeping in mind that the Court can decertify the class at any time, the Court gives Plaintiffs an opportunity to provide a workable subclass plan which will solve management problems created by variations in state law, if any. *See In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir.1986) (observing that class plaintiffs met their burden of proving predominance by undertaking an extensive analysis of various state laws, ulti-

mately separating the law into four categories); *see also Castano,* 84 F.3d at 742 (presenting *In re Sch. Asbestos Litig.* as an exemplar of how a plaintiff can meet its burden).

### 2. Superiority

█ In addition to proving predominance, Plaintiffs must also show that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Factors for the Court to consider include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

Plaintiffs argue that not only is a class action the superior method for adjudicating this controversy, it is the only method. Because the individual claims involved are relatively small, absent a class action it would be economically unfeasible for class members to prosecute individual claims. *See Shaw,* 91 F.Supp.2d at 952. Furthermore, to the extent that individual claims are filed, it would undermine judicial efficiency for courts to deal with thousands of individual suits claiming restitution for the price of Duract. *See id.* at 958 (noting that the filing of "thousands or millions of individual lawsuits is preposterous and would constitute an egregious waste of judicial resources").

█ Defendants argue that the class action would be unmanageable. They claim that the Court would have to decide for each Plaintiff: (1) who prescribed the drug; (2) when the drug was prescribed; (3) whether the prescriber read the drug labeling; (4) whether the prescriber was aware from any source, of the risks of the drug; (5) whether the drug prescriber would have still prescribed the drug had he known what he knows now; (6) what Plaintiff paid; and (7) whether the Plaintiff has been reimbursed by his insurance company. Points one through five go to the learned intermediary doctrine, which the Court has already held has no bearing in this case for economic damages. The Court might also note with regard to point five, being that the Duract has been taken off the market because of its health risks, it is incontestable that no physician would prescribe Duract now. As to point six, although what various Plaintiffs paid for Duract may differ, there is obviously no requirement that all class members have identical damages. *See Shaw,* 91 F.Supp.2d at 956 ("The possibility that some class members may have larger damages than others is no significant obstacle to certification."). In this case for economic loss, damages are more readily ascertainable than many types of cases that have been certified as class actions. *See Mullen,* 186 F.3d at 626–27 (affirming the class certification of a class of injured cruise ship workers who suffered varying degrees of injury). Finally, as regards point seven, both third-party payers and Duract users are class representatives and class members. Thus there is no reason to determine reimbursement amounts until the time for allocating damages or settlement funds.

Finally, Defendants argue that the class definition is flawed because it includes both the consumers and their insurers. Defendants argue that this will lead to a double recovery. This argument is flawed and contradicted by Defendants' observation that reimbursement amounts will have to be determined. Both third-party payers and consumers are members of the class because in most cases the third-party payers paid for some, but not all, of the consumer's Duract expenses. This was the case of the named Plaintiffs. Rather than creating a double recovery, having all these parties together prevents a double recovery.

Taking the 23(b)(3) factors in turn, (A) as damages are small, members of the class do not have an interest in individually controlling the prosecution or defense of separate actions, (B) there is no indication that litigation concerning the controversy has already been commenced by members of the class, (C) because of economies of scale, it is desirable to concentrate the litigation of the

claims in one forum, and (D) the class action will not be unmanageable for the Court. Thus, the superiority requirement is met.

### D. *Additional Time*

 Defendants argue in the alternative that class certification is premature and that they should be granted more time to conduct discovery on class certification issues. Defendants' Response to Plaintiffs' Motion for Class Certification was filed on October 6, 2000 and the original complaint bringing this class action was filed on June 13, 2000. Thus, Defendants had almost *four months* to pursue discovery on class certification before responding. In addition, the items for which Defendants seek additional discovery, whether Plaintiff Arkansas Fund is a consumer within the meaning of the DTPA, the amounts the named Plaintiffs paid for Duract, the number of prescriptions paid for by the named fund, and the nature of the Named Fund's contractual obligations to its insureds, are relevant only to the merits of the case and thus have no bearing on the issue of class certification. *See Eisen,* 417 U.S. at 177, 94 S.Ct. at 2152 (noting that a court may not consider the merits of a Plaintiff's case in ruling on class certification). The fruits of such discovery will be relevant, if at all, in the context of a motion for summary judgment or at trial. Thus, Defendants' request is **DENIED.**

### IV. *CONCLUSION*

For the reasons stated above, the Court **CERTIFIES** this class under Federal Rule of Civil Procedure 23(b)(3). Defendants' request that the Court defer its ruling pending additional class discovery is **DENIED.** The class includes: individual consumers who purchased the prescription drug Duract, marketed and sold by Defendants, and who have not manifested signs of physical injury resulting from Defendants' conduct, health insurance companies, managed care organizations, self-funded health benefit plans, and other private entities that have provided prescription drug coverage and expended funds for Duract under private plans with individuals or their employers. Excluded from the class are purchasers or users of Duract who

have manifested physical injury allegedly as a result of taking said drug and the officers, directors or immediate family of any officer or director of Defendants. Plaintiffs are to submit a workable subclass plan, or a detailed analysis showing why one is not needed, within sixty days.

**IT IS SO ORDERED.**